SECOR v. BOARD OF TRUSTEES OF VILLAGE OF PELHAM MANOR
et al.

(Supreme Court, Appellate Division, Second Department.   June 23, 1896.)

1. STREET RAILROADS — CONSENT OF LOCAL AUTHORITIES — PUBLICATION OF NOTICE.

Laws 1890, c. 565, § 92, as amended by Laws 1892, c. 676, provides that, where application is made to the local authorities for consent to build a street railroad, such authorities shall publish notice thereof daily, if in a city, for at least 14 days, in two of its daily newspapers, and if in a village or town, for at least 14 days in a newspaper published therein, if any there shall be, and, if none, then daily in two daily newspapers, if there be two,— if not, one,—published in the city nearest such village or town. *Held*, that the statute does not require daily publication of the notice in the village or town where no daily paper is published, but publication for the prescribed length of time in a weekly paper in the village where no daily paper was published is sufficient.

2. SAME—PLACE OF PUBLICATION OF PAPER.

Where the publishers of a newspaper have their office in a village where they mail and circulate the paper, it is published in the village, though it is printed elsewhere.

3. SAME—PROCEDURE—DISCRETION OF BOARD.

Laws 1890, c. 565, § 92, as amended by Laws 1892, c. 676, which provides that public notice shall be given of the time and place when an application for consent of the local authorities to the construction of a street railway will be considered, by failing to provide when and how the hearing shall be had, leaves that matter in the discretion of the board.

Appeal from special term, Westchester county.

Action by Anna M. Secor against the board of trustees of the village of Pelham Manor and others to set aside, as null and void, a certain resolution of defendant board of trustees purporting to grant to defendant railroad company the right to construct a street surface railroad on certain streets in defendant village.   From an order continuing an injunction pendente lite, defendants appeal. Reversed.

Argued before BROWN, P. J., and CULLEN, BARTLETT, and HATCH, JJ.

Jabish Holmes, Jr., and John M. Tierney, for appellants.

William Vanamee, for respondent.

HATCH, J.   The injunction order herein restrains the board of trustees of said village from acting upon the application of the Westchester Electric Railroad Company for leave to lay its tracks in the village until they have published the notice as required by the statute, and restrained the said railroad company from acting upon the consent granted by said board of trustees.   Upon oral argument the injunction was sought to be sustained upon the ground that the consent which was given by the board to the railroad company was so given without the public hearing, or without sufficient opportunity for such hearing, as contemplated by the statute, and also upon the ground that the publication of the notice of hearing as required by the statute had not been complied with.   It was then practically conceded that the length of time during which said notice was published was sufficient, if it had been made in a paper con-

templated by the statute. Reflection seems to have convinced counsel that he was overhasty in making this concession, as we find the point urged as error upon his brief submitted since the oral presentation was made. The record discloses that a proper application was made by the railroad company, and that the board of trustees took the matter under advisement on the 2d day of December, 1895, and thereupon adopted a resolution fixing the 4th day of January, 1896, for the first consideration of the application, and directed that public notice be given by publication for at least 14 days in the Pelham Manor Tribune. It is not disputed but that publication was made in this newspaper for four successive weeks following the adoption of the resolution, or but that the matter thereof was in compliance with law. The point made is that the paper was not published in the village of Pelham Manor; that publication in such paper was not the publication contemplated by the statute. The statute which regulates this proceeding is section 92 of the railroad law (Laws 1890, c. 565, as amended by Laws 1892, c. 676). It reads:

"The application for the consent of the local authorities shall be in writing, and before acting thereon such authorities shall give public notice thereof and of the time and place when it will first be considered, which notice shall be published daily in any city for at least fourteen days in two of its daily newspapers if there be two, it not, in one, to be designated by the mayor, and in any village or town for at least fourteen days in a newspaper published therein, if any there shall be, and if none, then daily in two daily newspapers if there be two, if not, one published in the city nearest such village or town."

The first clause of the statute evidently relates to cities, and contemplates that, as they there have daily newspapers, publication shall be made therein for 14 days. It seems equally clear that daily notice is not required or contemplated in a village or town, for when it speaks of them it omits the word "daily," and simply requires publication in a newspaper published therein. If any other construction should obtain, many villages and towns could make no compliance with the statute. If there existed a weekly newspaper, a notice published therein would be invalid, while, if they proceeded to publish in an adjoining city, they would be met by the provision that this course is only permissible when no newspaper is published in the village or town. The conditions being so essentially different between village and city, the statute takes cognizance thereof, and provides for daily publication in one, and publication for 14 days in the other. The notice was published once a week for four consecutive weeks, beginning December 15, 1895. This was sufficient, so far as length of notice is concerned, as it covered a period in excess of 14 days. A publication once a week answered all the requirements of the statute. In re Bassford, 50 N. Y. 509; Wood v. Knapp, 100 N. Y. 109, 2 N. E. 632. The evidence is abundant to show that the newspaper in which the notice was published was one which answered the requirements of the law. It was printed in New Rochelle, but the place of business of its publishers, the mailing list, and place where it was mailed and circulated, was at the village of Pelham Manor. It was not published where it was printed, for it was not there circulated and given out to the public, which

is the essential thing necessary to constitute a publication. Bragdon v. Hatch, 77 Me. 433, 1 Atl. 140; Ricketts v. Village of Hyde Park, 85 Ill. 110. The statute providing for public notice of the time and place when the application will be considered by the board evidently contemplates that a hearing shall be had, by the board, of the persons interested. When and how this hearing shall be had is not provided in the statute. The method of procedure must therefore rest very largely in the discretion of the board, and while the courts would not tolerate an abuse of discretion which arbitrarily excluded a fair and reasonable hearing, by the board, of interested parties; yet when it appears that parties have had a hearing, and reasonable opportunity has been given for the hearing of all, the court ought not to interfere and restrain action by the board unless it be clearly shown that this right has been unnecessarily denied, and that actual prejudice and damage has resulted, or will result, to the party seeking redress. In the case before us it appears, without dispute, that, when the board met, interested parties were heard for and against granting the application, and the minutes of the board recite that, after hearing many citizens (naming them), "no other citizen apparently wishing to be heard, Mr. Roosevelt moved that the public hearing be closed, and that the board proceed with business. Duly seconded and carried." The resolution which the board subsequently adopted recited that the public notice was given and a public hearing had in pursuance thereof, "whereat all persons so desiring were given an opportunity to be heard, and were heard." These recitals are not essentially disputed. The affidavits in opposition do not dispute the substantiated fact of the recital, which clearly establishes that the public meeting contemplated by the statute was held, and that fair opportunity for the expression of views was given. Assuming the fact to be that the public hearing was not formally closed at the first meeting, but was adjourned from time to time, and at such times interested parties were further heard, does not at all militate against our conclusion. There was no obligation resting upon the board, nor was there command of the statute, that they should continue to adjourn for the purpose of hearing interested parties, or that interested parties acquired the right to be heard because the board adjourned without taking formal action upon the application. We do not say that there may not be circumstances which would require interference by the court, even though hearing had been once had, but they do not exist here. There is nothing which appears in these papers to show that any one has been prejudiced or damaged by the action which the board took, or that any one was prejudiced because the board did not further hear them. All that is asserted of damage to any one is that, by tearing up the street and laying the tracks, plaintiff will be injured. This injury she will suffer even though no infirmity attends upon the grant. It is not occasioned by failure to further hear interested parties, for it is not made to appear that this failure, if failure it be, has changed or affected in the slightest the action of the board, or would have done so. When the board granted the application, all the trustees were present; and they were authorized then to perform

any proper official act, and consequently authorized to pass the resolution which they did. 1 Dill. Mun. Corp. (4th Ed.) §§ 263, 264; 1 Beach, Pub. Corp. §§ 265–271. We think that there has not been established any substantial departure from the requirements of the statute, and a case was not made warranting the interference of the court by injunction.

The order should be reversed, and the injunction dissolved, with $10 costs and disbursements. All concur.