(37 Misc. Rep. 363.)

## HOUGH v. SMITH et al.

### (Supreme Court, Special Term, Fulton County.   March, 1902.)

1. STREET RAILROADS—GRANT OF FRANCHISE—NOTICE OF MEETING.
    Where a special meeting of the trustees of a village is adjourned without date, and without postponing until a future date an application for their consent to the granting of a franchise for a street railroad company, they cannot again consider the application at a subsequent meeting of the board without a publication of their intent so to do, as is required by Laws 1890, c. 565, § 92, in the case of the first meeting.

2. SAME—EXTENT OF GRANT.
    A board of village trustees cannot grant to a street railway company a consent to build a road which would make the water pipes in the street subservient to the privileges conferred upon the street railway company.

3. SAME—DISQUALIFICATION OF TRUSTEES.
    Where village trustees owned stock in a street railway corporation applying for right to use the streets of the village, a consent procured from the trustees, joined in by such stockholders, is void.

Action by Gordon Hough against Isaac E. Smith and others.   Motion to vacate injunction.   Denied.

Andrew J. Nellis and George C. Butler, for the motion.
Edward R. Hall and Frank R. Towman, opposed.

SPENCER, J.   This is a motion to vacate an injunction pendente lite granted by this court on the 3d day of March, 1902, restraining the defendants, as officers and trustees of the village of St. Johnsville, from granting consent to the Mohawk Interurban Traction Company to build and operate a street-surface railroad in the streets of said village.   Several considerations incline me to continue this injunction.

1.   The application for consent, under section 92 of the railroad law, was made to the board of trustees on the 13th day of August, 1901, whereupon a special meeting of the board was appointed for August 28th, and notice published that the application would first be considered at such meeting.   At the meeting held pursuant to said notice the form of a proposed consent was presented to the board and taken up for consideration.   A large number of citizens and taxpayers were present.   Their views were canvassed by the board.   Every one of them voted against granting the consent.   The board did not come to a

vote upon the proposition, and, without postponing the consideration
of the matter to a future time, adjourned the meeting without date.
No further consideration of this matter was attempted until on or
about February 5, 1902, when a form of consent somewhat different
from the other was taken up for consideration, and postponed until
the 3d day of March, at which time action on the part of the board was
stayed by the injunction herein; the plaintiff claiming that under the
statute the defendants are not authorized to act until they have again
published notice of their intention so to do. The diligence of counsel
has discovered no direct precedent to guide the court as to the intent
and scope of the statute requiring the local authorities to give public
notice of the time and place when the application shall first be con-
sidered. One of its objects, no doubt, is to provide a public hearing by
parties interested (Secor v. Village of Pelham Manor, 6 App. Div.
236, 39 N. Y. Supp. 993); but this I do not deem to be its only or
paramount purpose. The statute makes no mention of any hearing
by parties interested. Its paramount object would seem to be to insure
general publicity in respect to any consideration which the local au-
thorities might have in respect to the subject. Having accomplished
such publicity as to the first meeting, the law making power could very
properly rely upon the assumption that all future meetings for such
consideration would be had after orderly adjournments. When the
special meeting of August 28, 1901, was adjourned without date, and
without any postponement of its subject-matter, those in attendance
were justified in assuming that their opposition to the granting of the
consent had been effectual, and that nothing further would be at-
tempted in respect to the application. It is evident that the defendants
at that time regarded the matter in the same light, as nearly six months
elapsed before any attempt to revive the matter was attempted, and
then apparently because the terms of office of the defendants Smith and
Taylor, whose personal interests in the subject will be hereafter
considered, were about to expire. The granting of consents in a
case like this does not come within the ordinary and general powers
of the board of trustees, and hence the question here does not fall
within the rules laid down in People v. Common Council of City of
Rochester, 5 Lans. 11. In the case at bar the filing of a written appli-
cation by the applicant and the publication of notice by the board are
requisite in order to confer jurisdiction. People v. Grant (Sup.) 21
N. Y. Supp. 232, affirmed 138 N. Y. 653, 34 N. E. 513. We are not
called upon to say whether the application and publication had in
respect to the meeting held August 28, 1901, were in substantial con-
formity to the requirements of the statute. The real point in contro-
versy is whether any notice whatever was given of the consideration
which was attempted by the board on February 5, 1902, and postponed
to the 3d of March following. The decision of this question depends
upon what effect shall be given to the action of the board in adjourning
without date and without postponing the subject for future considera-
tion, and the subsequent lapse of time without action thereon. If
the notice published for the meeting of August 28, 1901, may be re-
garded as sufficient notice for the meeting held February 5, 1902, then
the paramount object sought by the statute, as conceived by the court,

was entirely thwarted. If the board intended to take up the consideration of the application at a later date, an orderly proceeding would have required its postponement to such date, and such postponement would have been notice to all concerned. In a matter of such grave importance as the granting of public franchises such as this, it is not unreasonable to require of the local authorities strict compliance with the ordinary rules of procedure, and such as would insure the objects sought to be accomplished by the statute. It is, therefore, my opinion that the defendant trustees lost jurisdiction to act upon the application by not postponing its consideration from time to time and until the attempted action of February 5, 1902. If they desired to retain the matter for future consideration and action, they should have so indicated by proper action duly entered upon the records of their proceedings.

2. The complaint alleges that the application filed with the board of trustees by the Mohawk Interurban Traction Company asked for a consent by the local authorities, which, if granted, would in terms make the property of the village, consisting of water pipes and conduits in the streets, subservient to the rights and privileges conferred upon the applicant. The written application is not among the papers presented to this court. The court would be slow to believe that such extraordinary privileges were intended to be sought or given, did not the allegation find support in the form presented to the board at the August hearing. It needs no argument to show that any attempt upon the part of the board to confer such privileges would be illegal, and wasteful of the property of the village, and, if threatened, justify the intervention of the court, in the exercise of its equitable powers, to prevent its accomplishment.

3. At the time the application was made and considered by the board, in August, 1901, the moving defendant Smith, president of the village, and the moving defendant Taylor, one of the trustees,—two of the five officers entitled to vote,—were the owners of stock in the applying corporation. In spite of this fact they took part in the proceedings, and, as the papers show, were very active in seeking to secure the grant to the applying company. They were also largely instrumental in the later revival of the subject before the board. Good morals, as well as good law, unite in condemning as illegal any contract made with, or consent given to, the applying corporation while any of its stockholders constituted a part of the board. Under such circumstances, the court should not be strict to mark lack of perspicuity in the complaint or indulge in nice presumptions against the right of the plaintiff to maintain the action. A technical cause of action may always be properly appareled with the purpose for which it is sought to be maintained. The purpose here being meritorious, every reasonable intendment should be rallied to the support of the complaint. The claim is now made that these officers no longer possess any interest in the applying corporation; but the manner and method of their denial lend support to the belief that they have parted with such interest in order to purge themselves of their disability to vote upon the application. But whether they have so parted with their interests as to enable them now to perform impartially their du-

ties as trustees of the village is a subject upon which the court will not speculate. No serious harm can result from the continuance of the injunction restraining the defendants from again considering or acting upon any application of the applying corporation until the board has published a notice as required by the statute.

The motion to vacate is denied, with costs, and the order made March 3d is modified in accordance with the views expressed in the last foregoing paragraph.

Ordered accordingly.