(119 App. Div. 271)

### PEOPLE ex rel. BROWNE et al. v. METZ, Comptroller.

(Supreme Court, Appellate Division, First Department. May 24, 1907.)

1. STATUTES—REPEAL BY IMPLICATION.

The repeal of statutes by implication is not favored, and it is only where two provisions are inconsistent that a former provision will be deemed repealed.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Statutes, § 228.]

2. MUNICIPAL CORPORATIONS—STREETS—VACATION—PURCHASE BY ABUTTING OWNER.

Laws 1895, p. 2042, c. 1006, authorizes the discontinuance of streets in the manner provided by section 6, and directs the commissioners appointed to estimate the damages caused thereby, in cases where the city has any right and interest in the discontinuance thereof, to report the value of such right and interest over and above all taxes and assessments theretofore confirmed against the parcel, and the assessment for benefit levied upon the strip for the closing and discontinuance of the street. Section 17 of the act (page 2054) provides that, after the authorities have determined that the land formerly occupied by the street shall not be required for other public use, the owner of lands fronting on the street may acquire all the right and interest of the city in the land within the street, on payment of the amount allowed by the commissioners as the value thereof and of the amount due on account of the assessments and taxes; the application to purchase to be made within one year after confirmation of the commissioners' report. Laws 1903, p. 871, c. 379, amending Greater New York Charter, Laws 1901, p. 79, c. 466, § 205, provides that the commissioners of the sinking fund shall have power to sell the right and interest of the city in the lands lying within any street, which has been discontinued to the owner of land fronting on such street on such terms as to the commissioners shall seem proper, provided that they shall first determine that the lands so sold are not needed for any public use. *Held*, that the latter section did not repeal said Laws 1895, p. 2054, c. 1006, § 17; the two provisions not being inconsistent.

Appeal from Special Term, New York County.

Motion for peremptory writ of mandamus by the people, on the relation of Romaine Browne and another, against Herman A. Metz, as comptroller. From an order denying the motion, relators appeal. Reversed.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, CLARKE, and LAMBERT, JJ.

James A. Deering, for appellants.
John P. Dunn, for respondent.

INGRAHAM, J. The relators own a piece of property on 168th street and Gerard avenue. The title to Gerard avenue had been acquired under proceedings instituted by the city of New York; the fee having vested in the city in the year 1888. Subsequently the city discontinued a portion of Gerard avenue in front of the relators' property, leaving a portion of the avenue as then used discharged from the public easement. This would cut off the frontage of the relators' property on Gerard avenue. In October, 1897, commissioners of estimate and assessment were appointed in proceedings to open 168th street; and thereupon, and in April, 1898, an order was entered authorizing and directing the commissioners to ascertain and determine the damage to the relators' property in consequence of discontinuing and closing of a portion of Gerard avenue, and the commissioners were also directed, under section 6, c. 1006, p. 2042, of the Laws of 1895, to appraise, state, and report the value of the right, title, and interest of the city of New York in and to the fee of the land in Gerard avenue discontinued and closed by the city, over and above such sums as they may assess for benefit on such parcels of land, and such taxes and assessments as may be a lien thereon at the time of their said estimate and assessment. This order was affirmed by this court in Matter of Mayor, 28 App. Div. 143, 52 N. Y. Supp. 588, and by the Court of Appeals in 157 N. Y. 409, 52 N. E. 1126. The commissioners made their final report on November 25, 1905, in which they found that the taxes and assessments against the property included within the portion of Gerard avenue that had been discontinued exceeded the appraised value of the land in the sum of $262.54, so that the value of the land included in the bed of Gerard avenue that had been discontinued was worth less than the taxes and assessments upon it. Subsequently the relators tendered to the comptroller the amount found due by the commissioners for taxes and assessments upon this plot of land, which exceeded the appraisal value of the land as fixed by the commissioners, and requested the comptroller to execute a deed of the city's title to this land, which the comptroller refused, whereupon this proceeding was brought to compel him to execute this deed.

The question of the right of the relators to a deed of this property depends upon section 17, c. 1006, p. 2054, of the Laws of 1895, and it is claimed by the defendant that that section has been repealed by an amendment (chapter 379, p. 871, Laws 1903) to section 205 of the charter (chapter 466, p. 79, Laws 1901). By section 6, c. 1006, p. 2042, of the Laws of 1895, the commissioners are required to—

"further and separately appraise and state and report the value of the right, title and interest of such city, of, in and to the fee of the land remaining in such discontinued or closed street, avenue, road, highway, lane, alley or thoroughfare upon the discontinuance and closing thereof over and above such sum as they may assess for benefit on such parcel of land and of such taxes and assessments as may be a lien thereon at the time of their said estimate and assessment; * * * and such report when so confirmed by said court shall be final and conclusive as well upon such city as upon the owners, lessees and the persons and parties interested in and entitled unto the lands, tenements, hereditaments and premises mentioned in the said report, and also upon all other persons whomsoever."

The commissioners, acting under the authority conferred by this section, proceeded to make such appraisal, and reported to the court the value of the right, title, and interest of the city to the fee of the land discontinued and abutting on relators' property. Section 17 of the said act provides that:

"Whenever such city shall have any right, title or interest in and to the lands lying within the street, avenue, road, highway, alley, lane or thoroughfare so discontinued and closed and the local authorities shall determine that said parcel of land or any part thereof shall not be required for other public use, the owner of lands fronting on such street, avenue, road, highway, alley, lane or public square or place so discontinued and closed at the time of such closing or his heirs and assigns may acquire all the right, title and interest of such city in and to such or any parcel of land lying within the lines of said street, avenue, road, highway, alley, lane or thoroughfare discontinued and closed as aforesaid in front of the lands owned by said person or persons respectively upon payment to the comptroller or chief financial officer of said city of the amount estimated and allowed by the said commissioners of estimate and assessment as the value of such right, title and interest as aforesaid; and also of the amount due on account of all assessments and taxes confirmed against the same and a lien thereon, or so much thereof as the local authorities may deem just and equitable; provided, however, that such person shall, in writing, apply to the comptroller or chief financial officer of such city for said grant or conveyance within one year after the date of the confirmation of the report of the commissioners of estimate and assessment as aforesaid, and in case such application shall be so made, the comptroller or chief financial officer of the city shall cause to be prepared and delivered to said person or persons a conveyance or grant of the right, title and interest of such city in and to such parcel of land in such form as shall be approved by the counsel to the corporation or chief law officer of said city, and when so approved said conveyance shall be executed by the mayor and clerk of the common council, * * * and the said grant or conveyance shall be delivered to such person or persons applying therefor upon payment of the sum required by this act to be paid."

To entitle an abutting owner to a conveyance under this provision, it is necessary that the value of the lands to the city shall be ascertained by commissioners of estimate and assessment, with a determination by the local authorities that the parcel of land shall not be required for other public use, and the payment to the city of the amount found by the commissioners of estimate and assessment as the value of the land over and above the taxes and assessments, and also the taxes and assessments levied on the property. This provision seems to be quite plain. It is to enable the owners of property that abuts upon a street to still preserve their frontage on the street, notwithstanding the fact that a part of the street has been discontinued; and it gives to these abutting owners an absolute right to a conveyance from the city when the city has determined that the land in the bed of the street that has

been discontinued is not needed for other public purposes. It requires the owner of abutting property to procure from the commissioners of estimate and assessment an appraisal of the land, and to apply to the comptroller within one year after the confirmation of the report of the commissioners for a conveyance, and then a payment of the amount ascertained by the commissioners of the taxes and assessments. If either of these are neglected, then the title of the city becomes absolute, and the property must be disposed of according to the general law in relation to the disposal of real property owned by the city.

The amendment of section 205 of the charter by chapter 379, p. 871, of the Laws of 1903 does not seem to me to be inconsistent with this limited right of the owner of abutting property to a conveyance. The amendment to the charter which the Special Term held to be a repeal of this provision of the act of 1895 is as follows:

"Said commissioners of the sinking fund shall also have power to sell and convey the right, title and interest of the city in and to the lands lying within any street, avenue, road, highway, alley, lane or public place or square that has been discontinued and closed, in whole or in part, by lawful authority, to the owner of lands fronting on such street, avenue, road, highway, alley, lane or public place or square so discontinued and closed, on such terms and conditions and for such consideration as in the judgment of the said commissioners of the sinking fund shall seem proper, provided the said commissioners of the sinking fund shall first determine that the said lands or the part thereof so sold and conveyed are not needed for any public use."

This provision is general, relating to all lands that have been parts of discontinued streets, avenues, highways, roads, alleys, lanes, or public squares, but cannot be said to be inconsistent with a special right given to owner of specific real property in relation to which a special rule has been provided. It seems to me that these two sections can be without difficulty read together, and make a consistent scheme for the disposition of property in an abandoned street. Before any property is to be conveyed, the local authorities are required to have determined that the property is not needed for other public uses; but when that is done, if its value has been ascertained by commissioners of estimate and assessment, the owner of abutting property may, within a year, obtain a conveyance by the payment of the sum thus ascertained and the taxes and liens thereon. But if no such application has been made, or the amount has not been ascertained, or the amount fixed has not been paid by the owner of abutting property within one year, or if for any reason the provision of the Laws of 1895 are not complied with, then the commissioners of the sinking fund have the power under this amendment to the charter to sell upon such terms as are just.

Repeal by implication is not favored, and the rule is general that it is only where the two provisions are inconsistent that a former provision will be deemed repealed. Such a case is illustrated in Matter of N. Y. Institution, 121 N. Y. 234, 24 N. E. 378. It was there held that an act of 1865 was not repealed by a subsequent act, as they were not inconsistent or repugnant, but was repealed by the consolidation act (Chapter 410, p. 1, of the Laws of 1882), because it represented a complete system covering the subject regulated by both the act of 1865 and the subsequent act; it being said that this was a case—

"where the prior provision of law has been entirely dropped, and provisions upon the same subject are found in the new act. Under such circumstances, how is the consolidation act to be construed? It was the manifest intention of the Legislature that it should take the place of the numerous special and local acts applicable to the city of New York, which had been enacted for more than a century, and to rescue them from the obscurity, uncertainty, and difficulty caused by their scattered condition; and that intention should have effect. * * * Here sections of the act of 1865 contained provisions for the assessment and payment of the expenses of improving streets, and complete provisions upon the same subject, somewhat dissimilar, however, are contained in the consolidation act, and hence they must be deemed, under all the decisions, to take the place of the prior provisions, and to furnish the only rule upon the subject."

There was no such intention expressed by the amendment of the charter. In Reis v. City of N. Y., 188 N. Y. 58, 80 N. E. 573, it would seem to be the opinion of the Court of Appeals that portions of this act of 1895 were in force. The determination of the board of public improvements was a determination by the authorities vested with that power under the statute of 1895, and we think, therefore, that the relators were entitled to a deed of the property.

The order appealed from should therefore be reversed, with $10 costs and disbursements, and the peremptory writ of mandamus granted, with $50 costs. All concur.

---

(119 App. Div. 214)

VAN KANNEL REVOLVING DOOR CO. v. W. & J. SLOANE et al.

(Supreme Court, Appellate Division, First Department. May 24, 1907.)

1. MECHANICS' LIENS—ASSIGNMENT OF MONEY DUE—FILING ASSIGNMENT—EFFECT OF FAILURE TO FILE.

Under Laws 1897, p. 521, c. 418, § 15, requiring an assignment of money due or to become due for labor performed or materials furnished for improvement of real property, or an order drawn by a contractor or subcontractor on the owner for payment of such money, to be filed, etc., an equitable assignment not so filed is inoperative as against subsequent liens.

2. SAME—EQUITABLE ASSIGNMENT—WHAT CONSTITUTES.

3. SAME—EFFECT OF ASSIGNMENT OF CLAIM.

The letters did not constitute an absolute promise on the part of defendants to pay G.'s subcontractors, but merely a promise to retain and devote to their payment the amounts they might earn under their respective subcontracts.