SCHIEFFELIN v. McCLELLAN, Mayor, et al.

(Supreme Court, Appellate Division, First Department.　December 22, 1909.)

1. STATUTES (§ 163*)—GENERAL AND SPECIAL STATUTES—REPEAL.

A later special statute, which covers the whole subject-matter of an earlier general statute, and which, though not repugnant to the earlier statute, embraces new and more specific provisions, is a substitute for and a repeal, pro tanto, of the earlier general act.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 238; Dec. Dig. § 163.*]

2. STREET RAILROADS (§ 4*)—FRANCHISES—STATUTES—REPEAL.

Railroad Law (Laws 1890, p. 1109, c. 565) § 92, as amended by Laws 1893, p. 910, c. 434, providing for the manner of procuring the consent of local authorities for the construction and operation of street surface railroads, is a general act, covering the whole state, and is pro tanto repealed by Greater New York Charter (Laws 1901, p. 38, c. 466) § 74, as amended by Laws 1905, p. 1548, c. 630, on the same subject, subsequently enacted, and its provisions control within Greater New York.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 7; Dec. Dig. § 4.*]

3. STREET RAILROADS (§ 24*)—FRANCHISES—CONSENT OF LOCAL AUTHORITIES—PROCEEDINGS.

The fact that the board of estimate and apportionment of New York City, assuming to proceed at the same time, under Greater New York Charter (Laws 1901, p. 38, c. 466) § 74, as amended by Laws 1905, p. 1548, c. 630, and Railroad Law (Laws 1890, p. 1109, c. 565) § 92, as amended by Laws 1893, p. 910, c. 434, relating to the consent to the construction and operation of street surface railroads, considered the application before the day fixed for a public hearing, under section 92, and expressed an approval of the application, did not show such a violation of the railroad law as to make the act of the board illegal in further considering the application, and the board was not thereby divested of jurisdiction to consider the application at the time and place fixed for a public hearing, under the railroad law.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 24.*]

McLaughlin and Clarke, JJ., dissenting.

Appeal from Special Term, New York County.

Action by William Jay Schieffelin against George B. McClellan, as Mayor of New York City, and others.　From an order granting an injunction pendente lite, defendants appeal.　Reversed.

Argued before INGRAHAM, CLARKE, HOUGHTON, McLAUGHLIN, and SCOTT, JJ.

Terence Farley, for appellants.

Julius H. Cohen, for respondents.

SCOTT, J.　This is an appeal from an order enjoining the board of estimate and apportionment of the city of New York from proceeding further with the hearing upon, and from acting upon, an application for certain changes and modifications to the contract heretofore entered into between the city of New York and the South Shore Traction Company.　The only question we have considered is whether or not the board may legally proceed to act, and whether they may so legally proceed depends upon the question whether or not their acts are reg-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ulated by section 92 of the Railroad Law (Laws 1890, p. 1109, c. 565, as amended by Laws 1893, p. 910, c. 434), as well as by section 74 of the Greater New York Charter (Laws 1901, p. 38, c. 466, as amended by Laws 1905, p. 1548, c. 630), and, if so regulated, whether or not the provisions of these acts have been complied with. The two provisions read as follows:

"Railroad Law, § 92. The application for the consent of the local authorities shall be in writing and before acting thereon such authorities shall give public notice thereof and of the time and place when it will first be considered, which notice shall be published daily in any city for at least fourteen days in two of its daily newspapers, if there be two, if not, in one, to be designated by the mayor. * * * Such consent must be upon the expressed condition that the provisions of this article pertinent thereto shall be complied with and shall be filed in the office of the clerk of the county in which such railroad is located. Whenever the consent of the common council of a city is applied for, the first consideration, of which notice is hereby required, may be by committee of such Common Council. Any such notice, publication or consideration heretofore or hereafter given, made or had in substantial compliance with the requirements of this section, is and shall be sufficient notice, publication and consideration for all the purposes hereof notwithstanding any conflicting provision of any local or special act or charter."

The charter provisions, as they now stand, are as follows:

"Sec. 74. Before any grant of the franchise or right to use any street, avenue, waterway, parkway, park, bridge, dock, wharf, highway or public ground or water within or belonging to the city shall be made by the board of estimate and apportionment, the proposed specific grant embodied in the form of a contract with all of the terms and conditions, including the provisions as to rates, fares and charges, and, together with the form of the resolution or resolutions for the granting of the same, shall be entered in the minutes of the board of estimate and apportionment, and after such entry shall be published at least twenty days in the 'City Record' and at least twice in two daily newspapers published in the city, to be designated by the mayor, at the expense of the proposed grantee. The board of estimate and apportionment shall, before authorizing any such contract or adopting any such resolution, set a date or dates for a public hearing thereon, at which citizens shall be entitled to appear and be heard. No such hearing shall be held, however, until the notice thereof shall have been published for at least ten day immediately prior thereto in the 'City Record' and at least twice in two daily newspapers published in the city, to be designated by the mayor, at the expense of the proposed grantee, and the said board of estimate and apportionment, before authorizing any such contract or adopting any such resolution, shall make inquiry as to the money value of the franchise or right proposed to be granted and the adequacy of the compensation proposed to be paid therefor, and publish the results of such inquiry at least ten days in the 'City Record' and at least twice in the daily newspapers in which such form of contract shall be published. Every such contract or resolution shall be entered on the minutes or record of such board of estimate and apportionment, and every contract or resolution containing or making such grant shall require the concurrence of members of the board of estimate and apportionment entitled as provided by law to three-fourths of the total number of votes to which all the members of the said board shall be entitled and the votes shall be shown by the ayes and noes as recorded in the minutes of the board. Thirty days at least shall intervene between the introduction and final passage of any such resolution or authorization of such contract. The separate and additional approval of the mayor shall be necessary to the validity of every such contract or resolution. This act shall apply to any renewal or extension of the grant or leasing of the property to the same grantee or to others. Within five days after the adoption of any such resolution or any such authorization, a copy thereof, including the full text of the franchise, grant or contract, and duly attested by the clerk of the board of estimate and apportionment shall be trans-

mitted to each of the following: The comptroller, the corporation counsel, the city clerk and the board of rapid transit railroad commissioners of the city of New York, to be preserved by them among the archives of their departments or office. All such certified copies shall be deemed to be public records."

Here we have two acts providing how the consent of the local authorities may be given to the use of the public streets by a street railroad corporation, what notice of the application shall be given, and what public hearing shall be had. The earlier one is a general act not covering the whole state. The other is a local and special act relating exclusively to the city of New York. The one provides in general terms that, before the local authorities act upon such an application, 14 days' notice shall be given of the time and place at which it will be first considered. No positive provision is made for a public hearing, which has to be read into the statute by implication. Secor v. Village of Pelham Manor, 6 App. Div. 236, 39 N. Y. Supp. 993. No directions are given us to the form or contents of the notice; that being left wholly to the discretion of the public authorities.

The later special act designed to effect the same result, to wit, notification to the public of any proposed consent, and an opportunity for a public hearing thereon, is much more stringent and specific. It requires that the proposed specific grant embodied in the form of a contract with all the terms and conditions, including the provision as to the rates, fares, and charges, together with the form of resolution for the granting of the same, shall be entered in the minutes of the board of estimate and apportionment and published at least 20 days in the City Record, and at least twice in two daily newspapers. The board is then required to set a date or dates for a public hearing thereon at which citizens shall be entitled to appear and be heard. Of this meeting 10 days' notice must be given by advertisement. The board must make inquiry as to the money value of the franchise or right proposed to be granted and the adequacy of the compensation proposed to be paid therefor, the results to be published for 10 days; and, finally, to prevent anything approaching haste in the action of the board, it is provided that at least 30 days must intervene between the introduction and the final passage of any resolution authorizing such a contract. It is apparent that the charter provisions require as much, and indeed much more, in the way of preliminary notice, and opportunity to citizens to learn of the proposed action and to intelligently discuss it, than is required by the railroad law. It is unreasonable to assume that the Legislature intended that both procedures should be followed, especially in view of that clause of section 92 of the railroad law which provides that:

"Any such notice, publication or consideration heretofore or hereafter given, made or had in substantial compliance with the requirements of this section is, and shall be sufficient notice, publication and consideration for all the purposes hereof notwithstanding any conflicting provisions of any local or special act or charter."

It is a well-established rule of statutory construction that a later special statute which covers the whole subject-matter of an earlier general statute, and which, although not repugnant to the earlier statute, embraces new and more specific provisions, will be held to have been

intended, within the scope of its operations, as a substitute for and a repeal pro tanto of the earlier general act. Heckmann v. Pinkney, 81 N. Y. 211; Excelsior Petroleum Co. v. Lacey, 63 N. Y. 422; People v. Gold & Stock Tel. Co., 98 N. Y. 67; N. Y. Cable Co. v. Mayor, 104 N. Y. 1–15, 10 N. E. 332. In my opinion this rule is distinctly applicable to the acts under consideration, and, as the preliminary acts of the defendants concededly follow the requirements of the charter, the injunction should not be continued.

Personally I should arrive at the same result if I considered that both acts must be followed, for I can see no basis for the claim that, in any event, proceedings must be carried to a conclusion under one act, before the preliminary steps may be taken under the other.

The order appealed from should be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs.

INGRAHAM and HOUGHTON, JJ., concur. McLAUGHLIN and CLARKE, JJ., dissent.

INGRAHAM, J. I concur with Mr. Justice SCOTT. To sustain this injunction the plaintiff must bring the official act which he seeks to enjoin within the provisions of chapter 301, p. 620, of the Laws of 1892, which provides that:

"An action may be maintained * * * to prevent any illegal official act on the part of any such officers * * * or to prevent waste or injury to or to restore and make good any property, funds or estate of such * * * municipal corporation."

This action is based upon the allegation that, if the board of estimate and apportionment now entertain this application, it would be committing an "illegal official act." The board of estimate and apportionment have proceeded as required by section 74 of the charter. They have also assumed to proceed according to the provisions of section 92 of the Railroad Law (chapter 565, p. 1109, Laws 1890, as amended by chapter 434, p. 910, Laws 1893), carrying on the proceedings under these two acts at the same time. The only ground upon which the plaintiff relies, and upon which the court below has held that a further consideration of this application would be an illegal official act of the board of estimate and apportionment, is that the board had to some extent considered the application before the day fixed for a public hearing under section 92 of the railroad law. I am inclined to agree with Mr. Justice SCOTT that the provisions of the charter established a substitute for and a repeal pro tanto of the general railroad act; but I also think that the mere fact that the board had given to the subject some consideration and had even expressed an approval of the application was not such a violation of the provisions of the general railroad law as would make the act of the board illegal in further considering the application. Here are two acts which substantially cover the same general subject. By both acts certain preliminary steps are required before the board can act. The board was required to give public notice of the time and place when the application would be first considered. If for any reason the board had omitted to give such public notice, or the notice was not for sufficient time, and the

board, discovering its mistake, had caused a new notice to be given fixing a time and place as required by the statute, I do not think the board would be divested of jurisdiction to consider the application at the time and place named because it was not the first hearing, or because at the first hearing the board had expressed an opinion as to whether or not the application should be granted. If such a mistake had been made at the beginning of the official term of the board of estimate and apportionment, the result would be, if this contention was sustained, that the subject could not be considered again during the official term of the members of the board; but it would have to be postponed until a new board came into office. Whatever impropriety there may be, if there is any, in this proceeding as presented by the papers, I cannot see that anything that had been done by the board took away from it its power to act upon the application after they had given the notice required by the railroad law, and had proceeded as required by the charter.

I therefore concur in the reversal of the order.

SCOTT and HOUGHTON, JJ., concur.

McLAUGHLIN, J. (dissenting). I am unable to concur in the conclusion arrived at by the majority of the court, for the following reasons:

The board of estimate and apportionment met on the 12th of November, 1909, and, assuming to act in accordance with section 92 of the railroad law, fixed the 10th day of December following as the day when the petition of the traction company should be "first considered and a public hearing be had thereon," and directed the publication of notices accordingly. Had the board stopped here, their proceedings would have been according to the provisions of the statute cited; but it did not, because at the same meeting it heard the report of a committee previously appointed favoring the proposed modifications, and then passed a resolution approving of the same, and referred the matter to the corporation counsel for approval as to form, to be reported by him at a meeting of the board to be held on the 19th of the same month. On the 19th the board again met, and, the corporation counsel's approval having been received, a resolution was passed approving the proposed modified contract and authorized the mayor to execute and deliver the same on behalf of the city. Its publication was then directed to be made as provided in section 74 of the charter, and the 23d of December fixed as the day for the public hearing thereon.

The acts of the board thus taken did not comply with the letter or spirit of the provisions of the railroad law. Under that section the board was required, "before acting thereon," to give at least 14 days' notice of the time and place when the petition would "first be considered." A public hearing is impliedly required by the section (Secor v. Village of Pelhal Manor, 6 App. Div. 236, 39 N. Y. Supp. 993), to the end that any and all persons interested may be heard on the subject-matter of the application before the board shall take any action whatever. The board of estimate and apportionment could not, on

the 12th of November, 1909, lawfully consider the merits of the petition, approve the modification, or approve a proposed modified contract. It could not do this until the hearing provided for had been had. This, it seems to me, necessarily follows from the provisions of section 92 of the railroad law, if that section be applicable. I am of the opinion the section is applicable, and, if this be correct, then it follows that the acts of the board were unlawful, and such unlawful acts cannot be made the basis of any valid action under section 74 of the charter, and the publication of the proposed contract so approved would be of no effect.

But, although the board assumed to act in accordance with both sections, the order appealed from is to be reversed upon the ground that section 92 of the railroad law does not apply, since it was repealed pro tanto by section 74 of the charter, and that the action of the board is sanctioned by that section. No one, I take it, disputes the proposition tnat a general statute may be repealed by a special one subsequently passed and inconsistent therewith, or entirely covering the same subject-matter; but such repeals are not favored by the courts. Trust Company of America v. State Safe Deposit Co., 109 App. Div. 665, 96 N. Y. Supp. 585, affirmed 187 N. Y. 178, 79 N. E. 996; People ex rel. Brown v. Metz, 119 App. Div. 271, 104 N. Y. Supp. 649, affirmed 189 N. Y. 550, 82 N. E. 1131; Matter of the City of New York (Town of Hempstead), 125 App. Div. 219, 109 N. Y. Supp. 652, affirmed 192 N. Y. 569, 85 N. E. 1117. If, on a reasonable construction, the two acts are not inconsistent and may stand together, then the authorities are all to the effect that the general act is not repealed by the special act. 26 Am. & Eng. Enc. of Law (2d Ed.) 743; Staats v. Hudson River R. R. Co., *42 N. Y. 196; People ex rel. Kingsland v. Palmer, 52 N. Y. 83; Hankins v. Mayor, 64 N. Y. 18; Matter of Murray Hill Bank, 153 N. Y. 199, 47 N. E. 298; Davis v. Supreme Lodge, Knights of Honor, 165 N. Y. 159, 58 N. E. 891; Bush v. D. L. & W. R. R. Co., 166 N. Y. 210, 59 N. E. 838.

In Davis v. Supreme Lodge, Knights of Honor, supra, where the claim was made that a general law had been impliedly repealed by a special one, it was said:

"There is no implication of a repeal of the prior law, unless the later act embraces the subject-matter of the earlier, or unless the reason for the earlier act is beyond preadventure removed. Therefore every effort must be used to make all acts stand, and, if by any reasonable construction they can be reconciled, the later act will not operate as a repeal of the earlier. * * *. The leaning of the courts is so strong against repealing the positive provisions of a former statute by construction as almost to establish the doctrine of no repeal by implication. Where there is a difference in the whole purview of two statutes, apparently relating to the same subject, the former remains in force."

As I read these two sections, there is no inconsistency between them. On the contrary, when considered together, they present a harmonious scheme for the protection of the interests of the public in the granting of franchises. Under section 92 of the railroad law, the board of estimate and apportionment, when an application is presented for a franchise, must hold a public hearing before action upon the application. Under section 74 of the charter, before the franchise can be

granted, the proposed terms of the grant must be made public and a public hearing had thereon. This section does not purport to change the requirements of the railroad law. It merely imposes a further condition.

The prevailing opinions, it seems to me, proceed on an erroneous assumption that the object of the public hearing is the same in both cases, and that since the charter provision is more specific, and a later special act, it entirely supersedes the section of the railroad law in question. I do not so regard it. The purpose of the hearing required by the railroad law is to give the public an opportunity to be heard on the question whether or not any franchise should be granted. The hearing under the charter is required only after the board of estimate and apportionment has acted in favor of granting a franchise in some form, and its purpose is to afford the public an opportunity of approving or disapproving of the terms upon which it is proposed to grant it. When an application for a franchise is made under the charter, the board may refuse absolutely to grant it, in the first instance, and in that case there is no provision for a public hearing. It is not difficult to imagine that the public might, in one case, be interested in having a franchise granted just as much as it would, in another case, in having it refused, and under the railroad law they have a right to be heard in either case, which right does not exist under section 74 of the charter. It is obvious that if the board may pass a resolution favoring an application, without a public hearing thereon, it may also deny an application, in toto, without a public hearing. If it is unnecessary to hold a public hearing in the one case, it is equally so in the other.

I am of the opinion that the Legislature did not intend, by the enactment of section 74 of the charter, to repeal section 92 of the railroad law, and, if this be true, then it would seem necessarily to follow that the board was proceeding in an illegal way, and, if so, the action can be maintained. Ziegler v. Chapin, 126 N. Y. 342, 27 N. E. 471; Rogers v. Board of Supervisors, 77 App. Div. 501, 78 N. Y. Supp. 1081; Queens County Water Co. v. Monroe, 83 App. Div. 105, 82 N. Y. Supp. 610.

The order should be affirmed.

CLARKE, J., concurs.