State of Connecticut *v.* Shelton.

———— •◆•— —

STATE OF CONNECTICUT *vs.* CHARLES T. SHELTON.

The State, in holding and administering the school fund, is acting in its sovereign capacity.

A discharge in bankruptcy of a person indebted to the school fund as a borrower, does not affect the state as a creditor.

DEBT on a bond given by the defendant on the 11th of April, 1866, for the payment of a loan of $4,000 from the school fund of the state ; brought to the Superior Court. The defendant pleaded in bar a discharge under the United States bankrupt law. The form of the discharge was as follows :—

" District Court of the United States, District of Connecticut. Whereas Charles T. Shelton, of New Haven in said district, has been duly adjudged a bankrupt under the act of

Congress establishing a uniform system of bankruptcy throughout the United States, and appears to have conformed to all the requirements of law in that behalf, it is therefore ordered by the court that said Charles T. Shelton be forever discharged from all debts and claims which by said act are made provable against his estate, and which existed on the third day of June, A. D. 1867, on which day the petition for adjudication was filed by him; excepting such debts, if any, as are by said act excepted from the operation of a discharge in bankruptcy. Given under my hand and the seal of the court at Hartford, in the said district, this 7th day of March, A. D. 1868.        WILLIAM D. SHIPMAN, *Judge."*

The plaintiff demurred to this plea, and the case was reserved on the demurrer for the advice of this court. The bond in question was given jointly and severally with Catherine A. Shelton, who was the wife of the defendant and the first signer.

*W. B. Stoddard* and *E. H. Rogers,* in support of the demurrer.

1. It is an elementary principle in the construction of statutes limiting rights or interests, not to interpret them so as to embrace the sovereignty or government, unless that idea be distinctly expressed or result by necessary implication; and that none of the prerogatives or rights of the government are to be curtailed or taken away by a statute unless its language is express. 1 Black. Com., 261; 1 Kent Com., 460; Sedgw. on Stat. & Const. Law, 337.

2. The State of Connecticut is not only a sovereignty, (1 Story on Const., § 208, *Collector* v. *Day,* 11 Wall., 124,) but is acting in its sovereign capacity in its ownership and management of the school fund and in bringing the present suit. *Martin* v. *Waddell,* 16 Pet., 410; *McCready* v. *Virginia,* 94 U. S. Reps., 391; *State* v. *Sargeant,* 45 Conn., 358.

3. The word " creditor," as used in the English bankrupt statutes and in those of this country, has always been held not to include the sovereignty by implication. *Anon.,* 1 Atk.,

262; *Rex* v. *Pixley,* Bunb., 202; *Craufurd* v. *Attorney-General,* 7 Price, 5; *U. States* v. *King,* J. B. Wall., 12; *U. States* v. *Rob Roy,* 1 Woods, 42; *U. States* v. *Herron,* 20 Wall., 251; *Commonwealth* v. *Hutchinson,* 10 Penn. St., 466; *Saunders* v. *Commonwealth,* 10 Gratt., 494. In the same way a release under a state insolvent law does not discharge a debt due to the state or to the United States. *People* v. *Rossiter,* 4 Cowen, 143; *People* v. *Herkimer,* id., 348; *U. States* v. *Hewes,* Crabbe's C. C. R., 307; *U. States* v. *Wilson,* 8 Wheat., 253. These principles are recognized in other like cases arising under acts of Congress. *Griffin* v. *Ranney,* 35 Conn., 239; *Carpenter* v. *Snelling,* 97 Mass., 458; *Green* v. *Holway,* 101 Id., 250; *People* v. *Gates,* 43 N. York, 40; *Craig* v. *Dimock,* 47 Ill., 308, 317; *Bunker* v. *Green,* 48 id., 243; *U. S. Express Co.* v. *Haines,* id., 248.

4. Congress has no constitutional power to pass a law discharging a debt due to a state. Cooley's Const. Lim., 483; *Tucker* v. *Potter,* 35 Conn., 43; *Collector* v. *Day,* 11 Wall., 124; *U. States* v. *Railroad Co.,* 17 id., 322; *Warren* v. *Paul,* 22 Ind., 280; *Fifield* v. *Close,* 15 Mich., 505; *Clemens* v. *Conrad,* 19 id., 170; *Jones* v. *Keep's Estate,* 19 Wis., 369; *Sayles* v. *Davis,* 22 id., 225; *Union Bank* v. *Hill,* 3 Coldw., 325.

*C. S. Hamilton,* contra.

The claim sued upon comes entirely within the express provisions of, and without the exceptions to the statute. The inoperation of the statute as a bar to this claim can therefore be, if at all, only by construction, on the ground that the claimant is the State of Connecticut, and that this claim accrued to it in its sovereign capacity. That the State of Connecticut is a sovereign power *quoad* this claim, as against this defendant, or that the claim itself accrued to the State in its sovereign capacity, we deny.

1. The declaration discloses that the claim did not accrue to the State in its sovereign capacity. The State is a mere nominal plaintiff. The money was loaned from the school fund, and not from a fund that the State *controls as a sovereign*

*power.* The loaning of money by the School Commissioner is not an exercise of sovereign power by the State.

2. The oyer of the bond shows that the defendant is only a surety and received none of the money for which the suit is brought. The position of the signatures indicates this. The bond also shows on its face that Catharine A. Shelton, the principal, is a married woman, and hence her obligation would be utterly worthless unless the money went to her benefit. Gen. Statutes, 417, sec. 9; *Bank of N. England* v. *Smith*, 43 Conn., 327. And sureties are regarded with more favor under the bankrupt law than principals. *McMinn* v. *Allen*, 67 N. Car., 131.

3. Therefore, the claim not having accrued to the State while exercising the functions of a sovereign power, nor against the defendant as a principal debtor, it comes directly within the following decided cases:—*Jones* v. *The State*, 28 Ark., 119; *U. States* v. *Throckmorton*, 8 Nat. Bankrupt Reg., 309; *In Re Brandreth*, 21 N. Y. Supreme Ct., 585; *U. States* v. *Davis*, 3 McLean, 483; *Fowler* v. *Kendall*, 44 Maine, 448; *Reitz* v. *The People*, 72 Ill., 435.

4. The only cases that seem to lay down a different doctrine are cases where the United States is a party and *not a State;* or cases where a State was a party, but which were decided under the law of 1841, and where the claim *accrued to the State in the exercise of its sovereign powers.*

5. By virtue of Sec. 8, Art. I., of the United States constitution, the several states of the Union became divested of all sovereign power in respect to matters in bankruptcy under the acts of Congress. The power, by this section of the constitution, was given to Congress to pass "uniform laws on the subject of bankruptcies." Congress has passed a law which by express terms includes *all provable claims, and hence this one.* And therefore the State of Connecticut cannot, after it has delegated this branch of its sovereign power to the United States, and the latter has passed a law, now in force, on this subject, still remain a sovereign power in reference to the same thing. *Corey* v. *Ripley*, 57 Maine, 69, 75; *Silverman's Case*, 2 Abbott U. S. Reps., 243, 245. If the State of Con-

necticut still retains its sovereign character so far as to render the bankrupt law inoperative as to a claim in favor of the Commissioner of the School Fund, for money loaned, then by virtue of such sovereign power, owing no obedience to any laws but those of its own making, it may pass laws exempting any other class of claims for money loaned from the operation of the act, and thereby in fact repeal the act altogether.

GRANGER, J.   This is an action of debt brought by the State of Connecticut, to recover the amount of a bond given by the defendant to the State in consideration of a loan made to him from the school fund of the State.

The defendant pleaded a special plea in bar, setting up a discharge in bankruptcy, the plaintiff demurred to the plea generally, issue was joined on this demurrer, and the questions arising under that issue are reserved for the advice of this court.   The main question presented for our decision is, whether under the facts of this case the certificate of discharge is a bar to the plaintiff's claim.

The statute upon which the defendant relies is section 5119 of the bankruptcy act of 1867, which provides that "a discharge in bankruptcy duly granted shall, subject to the limitations imposed by the two preceding sections, release the bankrupt from all debts, claims, liabilities and demands, which were or might have been proved against his estate in bankruptcy.   It may be pleaded by a simple averment that on the day of its date such discharge was granted to the bankrupt, setting a full copy of the same forth in its terms, as a full and complete bar to all suits brought on any such debts, claims, liabilities, or demands.   The certificate shall be conclusive evidence in favor of such bankrupt of the fact and regularity of such discharge."

The construction of this statute gives rise to the questions presented in this case, and the first inquiry is, whether the statute embraces either the government or sovereignty of the United States or the government or sovereignty of the several states.   It may be stated we think as a universal rule in the construction of statutes limiting rights, that they are not to

be construed to embrace the government or sovereignty unless by express terms or necessary implication such appears to have been the clear intention of the legislature, and the rights of the government are not to be impaired by a statute unless its terms are clear and explicit, and admit of no other construction.

The same rules of construction are applicable to the sovereignty of the United States and that of the several states as govern the interpretation of statutes in England. Mr. Justice Blackstone states the rule to be, "that the King is not bound by any act of Parliament unless he be named therein by special and particular words. The most general words that can be devised, as any person or persons, bodies politic and corporate, affect not him in the least, if they may tend to restrain or diminish any of his rights or interests." 1 Black. Com., 262.

Chancellor Kent lays down the rule in nearly the same terms. He says—"It is likewise a general rule in the interpretation of statutes limiting rights and interests, not to construe them to embrace the sovereign power or government, unless the same be expressly named therein, or intended by necessary implication." 1 Kent Com., 460. The numerous cases cited upon the brief of the plaintiff's counsel sustain the rule.

The United States is not named in the bankruptcy act of 1867, in any of its provisions except the one which provides that all debts due the United States, and all taxes and assessments under the laws thereof, shall be entitled to priority or preference. *United States* v. *Herron,* 20 Wall., 251. And the same language is used in section 5101, giving priority to debts due the State in which proceedings in bankruptcy are pending. It is apparent that the intention of the framers of the act was that the United States and the several states should stand upon the same footing as creditors of the bankrupt, giving debts due to each respectively the same priority and preference, and nowhere referring to them as ordinary or common creditors. And in the language of Judge Clifford, "many of the provisions of the act describing the rights,

duties, and obligations of creditors are in their nature inapplicable to the United States, and if held to include the United States could not fail to become a constant and irremediable source of trouble."

We think it is clear upon principle and authority, that the bankruptcy act of 1867 was intended to operate upon the citizens and corporations of the several states, and not upon the states, either in their united or separate sovereign capacities; and in the case of *United States* v. *Herron*, above cited, the Supreme Court held that the general government was not affected by a discharge in bankruptcy, although the debt was provable against his estate. Other cases might be cited to the same effect, but this is sufficient upon this point.

The claim is made by the counsel for the defendant that the State of Connecticut is not acting in its sovereign capacity in this case; that it is a mere money lender, and that in this respect it stands upon the footing of an ordinary creditor having a provable debt against the estate of a bankrupt. This position is untenable. That the State of Connecticut is a sovereign power, as well as every other state, limited only by the constitution of the United States, seems to be the well settled opinion of most jurists and statesmen; but this point need not be discussed, as the defendant does not deny the sovereignty of the state, but only that it acts in its sovereign capacity in its management of the school fund, and in collecting this debt which was a school fund loan.

A brief consideration of the creation of this fund conclusively shows that it was established and has ever been carefully guarded by the State acting in its sovereign capacity. In 1786 Connecticut ceded to the United States all her right and title in the public lands, with the reservation of a tract of about three and a half millions of acres in Ohio, lying within her ancient charter limits, which was known as the "Connecticut Reserve." In 1795 a committee was appointed by the General Assembly to sell the lands reserved, and the avails were to be appropriated for the support of common schools. The lands were sold for the sum of twelve hundred thousand dollars. This constituted the school fund, and was managed by the committee who made sale of lands by authority of the

State, down to the year 1800, when other persons, including the state treasurer, were appointed "Managers of the School Fund," and in 1810 the first sole Commissioner of the School Fund was appointed by the legislature. By Art. 8, Sec. 2, of the constitution of the State, the school fund is made perpetual, and it is provided that "no law shall ever be made authorizing said fund to be diverted to any other use than the encouragement and support of public or common schools." This fund may well then be regarded as a fund created and maintained by unequivocal acts of sovereignty. The land from which it was derived belonged to the people of the state, the fountain head of sovereignty. It was established by act of the people through their General Assembly, and was made perpetual by them by their direct action in adopting the constitution; and it is emphatically a fund of the people, in their sovereign capacity, and is managed and controlled by them through the instrumentality of the state government or sovereignty. It has always been, and we trust always will be, the peculiar and anxious care of the State to see to it that no detriment befalls this fund, and if there is a fund that ought not to be affected by the bankruptcy of its debtors, this certainly is one; but the sacredness of the fund of course cannot change the rules of law. This fund being, as we have shown, a fund owned by the people of the state, and the state sovereignty acting for all the people, in seeking the payment of this claim, ought not to be affected by the defendant's discharge in bankruptcy, unless the law is clear and imperative; but so far is it from being so, that we think it is clearly the contrary. The cases cited show that the United States is not affected by such discharge, and we think it follows as a legitimate result that, if the whole sovereignty is not affected, none of the component parts should be. If the general government can collect its claims, notwithstanding the discharge, upon every just principle the state governments ought to have the same right. The same construction should be applied in the one as in the other.

We advise the Superior Court that the plea is insufficient.

In this opinion the other judges concurred.