STATE OF MINNESOTA v. NORTHERN TRUST COMPANY and Another.[1]

December 8, 1897.

Nos. 10,834—(31).

**Insolvent Bank—Preferred Claim of State—Insolvency of Assignee— Claim of State against Assignee—Preference.**

The Citizens' Bank of Redwood Falls became insolvent, and made an assignment to the Northern Trust Company. The state filed a claim against the estate, which was allowed as a preferred one. From the assets of the bank the trust company collected a large sum of money, out of which it made a partial payment to the state, and said company then wrongfully converted and mingled with its own funds and those of other creditors the unpaid balance so collected. The trust company then became insolvent, a receiver of its estate was appointed, but none of the balance of the money so collected by the trust company ever came into the hands of the receiver, and he paid out all moneys received by him from the trust company's estate except a small sum. The state attempted to file and have allowed by the receiver against the trust company's estate the balance of its unpaid claim against the bank, as a preferred claim. *Held*:

(1) That the money received and converted by the trust company was not the property of the state.

(2) That the state had no right to file such claim as a preferred one against the estate of the trust company or the receiver; but

(3) That the state may, as a general creditor of the trust company, file said claim with the receiver.

From an order of the district court for Hennepin county, Elliott, J., denying the application of the state of Minnesota for an order requiring the receiver of the Northern Trust Company to pay to the treasurer of the state out of the moneys collected by him the sum of $1,955.35, and for an order allowing the filing of said claim

. [1] Reported in 73 N. W. 151.

of the state with the receiver, the state of Minnesota appealed. Affirmed.

*H. W. Childs* and *Geo. B. Edgerton*, for the State.

*Daniel Fish*, for respondent.

BUCK, J.

The Citizens' Bank of Redwood Falls was organized as a banking corporation under the laws of this state, and, as such corporation, continued to do business in Redwood county until May 14, 1895, when it became insolvent, and made an assignment to the Northern Trust Company for the benefit of all the creditors of said bank. While it was doing business as such bank the state treasurer, August T. Koerner, deposited with it from time to time money amounting, in the aggregate, to the sum of $6,064.67, of which only $3,031.59 has been paid. Prior to receiving such deposits, the bank executed and delivered to the state treasurer a satisfactory personal bond, conditioned to pay said sums when duly required to do so.

The Northern Trust Company duly qualified as such assignee, and, upon failure of said bank to pay said unpaid deposit, the state duly filed with the assignee the said claim; and by order of the district judge said claim on April 13, 1896, was made a preferred claim, and the assignee directed to pay one thousand dollars thereof immediately, and thereafter, whenever said assignee should have in his possession moneys belonging to said insolvent estate not less than $500 in excess of such sums as might be necessary to pay the fees and expenses of administering said estate, then such excess should be paid over to the state treasurer, without further order, until said claim of the state should be fully paid. On April 17, 1896, the assignee paid to the state treasurer the sum of one thousand dollars, but never paid any further sum, although it collected money belonging to the bank amounting to the sum of $1,955.35 in excess of all the necessary expenses of administration.

On December 31, 1896, the Northern Trust Company also became insolvent, and Daniel Fish was appointed receiver thereof, and N. W. R. Hunter was duly appointed assignee of said bank in the place of the Northern Trust Company. The time limited by the court for presenting claims against the Northern Trust Company expired

July 15, 1897, which fact first came to the knowledge of the attorney general August 6, 1897, and on August 9, 1897, he gave notice to the receiver that, upon a petition duly attached to said notice, he would, on August 16, 1897, apply to one of the judges of the district court of Hennepin county for an order allowing the state of Minnesota to file its said claim of $1,955.35 in favor of the state, and against said Northern Trust Company, and asking that the time for so doing be extended, and that said claim be declared a preferred one against said trust company, and that the receiver be requested forthwith to pay into the treasury of the state of Minnesota the $1,955.35 out of moneys collected by him as receiver of said trust company. The matter was heard on the day designated, and Hunter, the assignee of the bank, consented that the receiver of the trust company pay the state the said claim; but the judge denied the application, without assigning any reasons therefor, and the state appeals.

In order that there may be a full understanding of the facts in the case, it is necessary to state that the bank assignment was made and subsequent proceedings had in the Ninth judicial district, Judge B. F. Webber presiding, and that the Northern Trust Company was located in Hennepin county, and the receiver therefor appointed by a district judge of said county, and this proceeding was brought in said county, being in the Fourth judicial district.

That this claim was a preferred one as against the Citizens' Bank of Redwood Falls we need not discuss, for a similar question was determined affirmatively by this court in the case of State v. Bell, 64 Minn. 400, 67 N. W. 212.

When the matter was pending in the district court of Redwood county, the district court of that county had jurisdiction of the parties and the subject-matter, and under the order of April 13, 1896, made by Judge Webber, making this claim a preferred one and directing the trust company to pay it as such to the state, the right of the state to be paid that amount out of the bank's assets in the hands of the assignee became conclusive, as there was no reversal of said order. The trust company, as assignee, having filed and allowed this claim, and paid over to the state treasurer the one thousand dollars, as directed by the order of the judge, must

be deemed to have had full notice of its contents. This knowledge it possessed when Fish was appointed receiver for it, December 31, 1896. Notwithstanding this knowledge and its obligations as a trustee to keep the trust fund of $1,955.35 separate and distinct, it wrongfully mingled it and that of other creditors with its own funds, and thus placed it where it could not be identified and separated. Now, can the receiver of the trust company, as such, evade the liability it had incurred to pay this as a preferred claim?

It is to be observed that this money converted by the trust company was not the property of the state. It was the money of the bank, but, when assigned, held in trust by the trust company, as assignee for the benefit of the bank's creditors; and, because the claim of the state was a preferred one, the title to the assets did not rest in the state. How far this fund might be followed by Hunter, the substituted assignee of the bank, or might have been followed by the state in a proper case and upon a complete trial, we need not here determine. In the recent case of Bishop v. Mahoney, supra, page 238, some of the rules applicable to this right of following trust funds are laid down; but it is unnecessary to repeat them here. The defendant receiver denied that he had any of the $1,955.35 fund in his hands, and alleges that no such fund ever came into his hands. This question was submitted to the court, and we see no reason to disturb the finding of the court thereon, as no evidence of any kind was introduced to contradict or impeach it. The state is therefore concluded by this finding. It had its day in court upon this identical question, and is bound by the decision. The state did have a preferred claim against the trust company, amounting to $15,669.71, for money it deposited with it directly, which the state filed as a preferred claim, and the amount was allowed and paid by the receiver; but it never presented this claim as a preferred claim, and the receiver, without notice of this claim, has disbursed nearly all of the funds which have come into his hands.

Although the state is concluded by the proceeding before the district court of Hennepin county from presenting this claim as a preferred one, we find no reason why it should not be permitted to

file a claim as a general creditor, which it has a right to do without being prejudiced by any prior proceedings herein.

The order of the trial court is therefore affirmed, with leave to the state to apply to said court to fix a time within which said claim may be filed with the receiver by the state, as a general creditor of said trust company; but the extent of the liability of said receiver on such claim if so filed is not here passed upon or determined.

Order affirmed.

CANTY, J.

I concur. An order was made in the assignment proceedings of the insolvent bank, declaring the state to be a preferred creditor, and ordering the trust company, as assignee of the bank, to pay the claim. If this order amounted to a final judgment or decree in favor of the state, and against the trust company, so that it was a legal obligation on which the state could sue the trust company in an independent action or proceeding, then the state would in law be a creditor of the trust company, and therefore, under G. S. 1894, §§ 4234, 4251, a preferred creditor. But it was not such an order. Except as hereinafter stated, it was enforceable only in the assignment proceedings, and the money of the bank in the hands of the trust company as assignee did not, by virtue of that order, become in law the money of the state until paid over to the state. But equity regards that as done which should be done, and if this money in the hands of the trust company as assignee (which should have been paid over to the state) could be traced into the hands of the receiver of the trust company, and there identified, the state would, in my opinion, be a preferred creditor, not by virtue of said sections 4234 and 4251, or section 5898 (see State v. Bell, 64 Minn. 400, 67 N. W. 212), but by virtue of the rules of equity applicable to such cases.

There are two successive steps to be taken in arriving at this conclusion: First, that equity regards that as done which should be done, and therefore the state has an equitable claim against the trust company; second, that, by reason of the equitable doctrine of following trust funds, the state may, if it can, follow the fund into

the hands of the receiver of the trust company. This last step, the state was not able to take. Therefore it is not in equity a preferred creditor, but its equitable claim still remains, which, in my opinion, it may enforce as an equitable claim in the receivership proceedings against the insolvent trust company. But, as the state has no standing as a creditor of the trust company except with the assistance of a court of equity, that court will not declare it to be a preferred creditor as long as it cannot trace the trust fund into the hands of the receiver.

MITCHELL, J.

I concur in the result, on the ground that the state is not a creditor of the trust company. As a preferred creditor of the bank, the state is possibly entitled to be subrogated to the rights of the bank against the trust company, so as to enable it to apply the proceeds of the claim of the former against the latter on its demand against the bank. But, at most, this is the extent of the state's rights in the premises.