### In re CARNEGIE TRUST CO.

### In re SUPERINTENDENT OF BANKS.

(Supreme Court, Appellate Division, First Department. June 7, 1912.)

1. COMMON LAW (§ 12*)—ADOPTION—EFFECT.

The common-law rule that the sovereign is entitled to a preference in the payment of debts due to him by an insolvent is in force in 1775 is in force in New York by virtue of the provision in Const. 1777, § 35, declaring that such parts of the common law as formed the law in 1775 shall continue the law of the state, subject to modification, and substantially continued in subsequent Constitutions, including Const. 1894, art. 1, § 16.

[Ed. Note.—For other cases, see Common Law, Cent. Dig. § 10; Dec. Dig. § 12.*]

2. COMMON LAW (§ 14*)—ADOPTION—EFFECT.

The people of the state in adopting the common law took over such of its rules as were applicable to and consistent with their conditions, and they thereby acquired the prerogatives of the English sovereign held and enjoyed by him for the public benefit.

[Ed. Note.—For other cases, see Common Law, Cent. Dig. § 3; Dec. Dig. § 14.*]

3. STATES (§ 110*)—CLAIMS—PREFERENCE TO STATE.

A state, when a depositor of an insolvent bank or trust company, is entitled to a preference over unsecured general creditors, in the absence of any provision in the banking law to the contrary, though the state took security for its deposit in the form of bonds of fidelity companies.

[Ed. Note.—For other cases, see States, Cent. Dig. § 108; Dec. Dig. § 110.*]

4. STATUTES (§ 239*)—CONSTRUCTION—DEROGATION OF THE COMMON LAW.

A statute in derogation of the common law must be strictly construed, and the common law must be held no further abrogated than the clear import of the language of the statute absolutely requires.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 320; Dec. Dig. § 239.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, New York County.

Application by the Superintendent of Banks of the State of New York for leave to declare and pay a supplemental dividend to the creditors of the Carnegie Trust Company. From an order denying a preference to the Treasurer of the State of New York, he appeals. Reversed and rendered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Robert P. Beyer, of New York City, Deputy Atty. Gen., for appellant.

Frank M. Patterson, of New York City, for Van Tuyl, Jr., State Supt. of Banks.

Tompkins McIlvaine, of New York City, for respondent.

SCOTT, J. This appeal presents but the single question whether or not the state, being a depositor in and creditor of an insolvent bank or trust company, is entitled to a preference in payment over unsecured general creditors. There is no dispute as to the facts. The Carnegie Trust Company of New York City, incorporated by this state, failed and went into liquidation on January 7, 1911. It had then on deposit the sum of $135,843.85 belonging to the state of New York, all but a few thousand dollars of which was part of a special fund known as the "Canal Fund." As security for the amounts so deposited, the trust company had filed with the state authorities two bonds in the aggregate sum of $265,000, one a bond of United States Fidelity & Guaranty Company of Baltimore, Md., for $75,000, and the other a bond of the Ætna Indemnity Company of Hartford, Conn., for $190,000. The United States Fidelity & Guaranty Company has paid to the state of New York the sum of $38,471.12, which was accepted in full satisfaction of its obligations under its bond. This amount was applied by the State Treasurer first to the payment in full of the deposit of the general funds of the state, and the balance, amounting to $35,048.24, was applied to the payment of the Canal Fund on deposit with said trust company, leaving a balance due of such Canal Fund of $97,371.73, and the state now claims to be entitled to a preferential payment of this sum. It does not appear that the Ætna Indemnity Company has paid anything on account of its obligations.

[1] There is no doubt that at common law the sovereign was entitled to a preference in the payment of debts due to him by an insolvent.

"It is perfectly clear that at common law the king has very peculiar prerogatives, much beyond the common right of a subject for the collection of his debts. Of these (not to mention others which are not to the present purpose), one was that where one was indebted to the king and likewise to other persons, the king's debt was to be preferred in payment; that is, the king was to be paid before any other creditor of the party, and consequently to be preferred in an execution. Mad. Exch. 183, c. 23, § 7. The general rule is, and this has been acknowledged in all cases, that when the right of the king and that of his subject concurred, that of the king shall prevail." Giles v. Grover, 9 Bingham, 128–183.

That this prerogative preferential right of payment existed at common law in April 19, 1775, is indisputable and undisputed. By the first Constitution of this state, adopted in 1777, it was provided:

"That such parts of the common law of England and of the statute law of England and Great Britain, and of the acts of the Legislature of the colony of New York, as together did form the law of said colony on the 19th day of April in the year of our Lord 1775, shall be and continue the law of this state, subject to such alterations and provisions as the Legislature of this state shall from time to time make." Section 35.

The same provision has been continued in each succeeding Constitution; its present form being as follows:

"Such parts of the common law, and of the acts of the Legislature of the colony of New York, as together did form the law of the said colony, on the nineteenth day of April, one thousand seven hundred and seventy-five, and the resolutions of the Congress of the said colony, and of the convention of the state of New York, in force on the twentieth day of April, one thousand seven hundred and seventy-seven, which have not since expired, or been repealed or altered; and such acts of the Legislature of this state as are now in force, shall be and continue the law of this state, subject to such alterations as the Legislature shall make concerning the same." Article 1, § 16.

[2] A similar provision is to be found in many other state Constitutions.

"In adopting the common law of England, the people of this state took over such of its rules as were applicable to and consistent with their conditions and circumstances. It became and is the law of the state and the basis of its jurisprudence, except so far as its principles and rules of action have been modified by Constitution, statute, or usages; or were inapplicable to our situation." Fulton H. L. & P. Co., v. State of New York, 200 N. Y. 400–412, 94 N. E. 199.

Among other consequences of this adoption of the common law of England as the fundamental basis of our jurisprudence was the devolution upon the people of the state of the prerogatives of the English sovereign, held and enjoyed by him for the public benefit. The preferential right of the state to be paid taxes due it has been frequently recognized and enforced and is traceable directly to the devolution upon the state of the prerogative of the English sovereign. In Central Trust Co. v. New York Cent. & H. R. R. R. Co., 110 N. Y. 250, 18 N. E. 92, 1 L. R. A. 260, it was said:

"We reiterate the statement of Porter, J., in Re Receivership of Columbian Insurance Co., 3 Abb. Dec. 239, that there is great force in the claim that 'the state has succeeded to all the prerogatives of the British crown so far as they are essential to the efficient exercise of powers inherent in the nature of civil government, and that there is the same priority of right here, in respect to the payment of taxes, which existed at common law in favor of the public treasury."

Again, this court said, in Matter of Atlas Construction Co., 19 App. Div. 415–419, 46 N. Y. Supp. 467:

"The right of the people of the state to collect a tax imposed directly by the state is certainly equal to the right of the political divisions of the state —which are merely political, and organized for the convenience of administration—to a priority over the general creditors of the corporation. Such tax is imposed by the state sovereignty for the purpose of providing for the state and local government; and as was said by the Court of Appeals in

the Columbian Insurance Co. Case, supra: 'The interest subsequently acquired by the creditor was subject to the prior rights of the state; and when the property, in virtue of local process, came to be in custodia legis, it was the duty of the court to respect this priority of right in the application of the funds of the insolvent corporation.' "

There is nothing to the contrary in Wise v. Wise Co., 153 N. Y. 507, 47 N. E. 788.  All that was decided in that case was, in the words of the opinion, that:

"Where there is no statute giving a preference, and no warrant or process has been issued for the collection of a tax on personal property, there is no controlling authority for preferring such a claim *over specific prior liens in favor of creditors obtained by levy under attachment or execution.*"

Central Trust Co. v. Third Ave. R. R. Co., 186 Fed. 291, 110 C. C. A. 1, much relied on by respondent, is to the same effect, denying the state's preference only as to prior debts specifically secured by lien.

[3] In the present case the state makes no claim to be preferred over creditors holding specific prior liens.  We think that it may safely be said, so far as concerns the collection of taxes, that:

"The weight of authority, even in the absence of a statutory lien or preference, seems to support the right of a state to a preference where the allowance thereof will not displace specific prior liens obtained in favor of other creditors."  Per Greenbaum, J., in Matter of Traders' & Travelers' Accident Co., 68 Misc. Rep. 440, 441, 125 N. Y. Supp. 85.

If the state by virtue of its inherent prerogative right is entitled to a preference in the payment of taxes, which are but debts due to the state created by the exercise of its arbitrary power, it is but a step to hold that it is entitled to a preference in the payment of other debts by virtue of the same prerogative right.  And so it has generally been held, in states which have adopted the common law of England.  Robinson v. Bank of Darien, 18 Ga. 165; Seay v. Bank of Rome, 66 Ga. 609; Booth v. State of Georgia, 134 Ga. 163, 67 S. E. 803; State v. Bank of Maryland, 6 Gill & J. (Md.) 205, 26 Am. Dec. 561; Orem v. Wrightson, 51 Md. 34, 34 Am. Rep. 286; State v. Northern Trust Co., 70 Minn. 393, 73 N. W. 151; State v. Bell, 64 Minn. 400, 67 N. W. 212; Insurance Com'r v. Commercial Mutual Ins. Co., 20 R. I. 7, 36 Atl. 930.  See, also, 26 Am. & Eng. Ency. of Law (2d Ed.) p. 479, and cases cited.

The leading case opposed to this view is one in New Jersey.  Freeholders of Middlesex Co. v. State Bank of New Brunswick, 29 N. J. Eq. 268, affirmed on opinion below 30 N. J. Eq. 311.  The Vice Chancellor admitted that the prerogative right of preference in payment had always been maintained in England, and conceded that:

"If by the adoption of the common law New Jersey became invested with this right, it holds it now in all its original force, and may wield it to-day in all its iron vigor."

He then proceeded to hold, upon a review of the New Jersey authorities, that the state of New Jersey had never adopted this particular prerogative right from the common law, being mainly brought to this conclusion apparently by the circumstances that until then the state had never attempted to exercise the right.  As has been shown, the exact contrary is true in this state.  With respect to certain debts,

to wit, taxes due to it, the state has uniformly and successfully insisted upon its preferential right to payment over creditors holding no specific lien. The authority of the New Jersey case above referred to is also much weakened by the fact that the decision as to the state's preferential right was unnecessary, because the Vice Chancellor found another quite sufficient reason for denying the claim of the state in the circumstance that before it had asserted any claim to a preference a receiver of the bank had been appointed and the title to all the assets had passed to him. Of course, all the cases dealing with the right of the United States to a preference in payment are beside the mark, for the United States never adopted the common law as the foundation of its jurisprudence, and any right to a preference which it asserts must be found in statutory authority.

If the right of the state to a priority of payment, over unsecured creditors, is acknowledged as to taxes, as it must be in this state, it is not easy to see how, upon any logical ground, that right can be denied as to indebtedness arising out of the loss of the state funds after they have been collected. They both rest upon the same footing. The claim of the state in either case rests upon no private right, but upon the right of all the people. The money is necessary and vital to the existence of the government and the carrying on of the governmental functions, and, as the right of the public is always paramount to that of the individual, so its right to collect and to recover public funds must be held to be paramount. The fund on deposit in the trust company was one created and maintained by unequivocal acts of sovereignty. It was established by act of the people, and is emphatically a fund belonging to the people in their sovereign capacity State v. Shelton, 47 Conn. 400. The government of the state is established for the good of the whole, and can be supported and carried on only by means of its revenues, which revenues the general good requires shall be protected. Consequently a priority in the payment of debts due to it is necessary for the general good to the end that its governmental function may be properly performed. State v. Bank of Maryland, supra.

It is suggested by the respondent that, because the banking law fails to provide that the state shall be entitled to priority of payment, the state should be deemed to have relinquished its prerogative right. What is more to the point is that the banking law has not declared that the state shall *not* have priority.

[4] Repeals by implication are not favored (People ex rel. Brown v. Metz, 119 App. Div. 271–275, 104 N. Y. Supp. 649; Grimmer v. Tenement House Department, 204 N. Y. 370–378, 97 N. E. 884), and especially is this true of implied repeals of the common law. Hence the well-established rule that statutes in derogation of the common law must be strictly construed.

In Rosin v. Lidgerwood Mfg. Co., 89 App. Div. 245–248, 86 N. Y. Supp. 49, Mr. Justice Woodward said:

"Lord Coke (2 Coke's Inst. 200) lays down the proposition that a statute made in the affirmative, without any negative expressed or implied, does not take away the common law, and this rule is now elementary."

To the same effect, also quoting Lord Coke, is Hardmann v. Bowen, 39 N. Y. 196–198.

In Bertles v. Nunan, 92 N. Y. 152, 44 Am. Rep. 361, dealing with the effect of a conveyance of real property to a husband and wife jointly, the court said:

"In construing these statutes the rule must be observed, and usually has been observed, that statutes changing the common law must be strictly construed, and that the common law must be held no further abrogated than the clear import of the language used in the statute absolutely requires."

We are unable to see any significance, so far as concerns the question now under discussion, in the fact that the state took security for its deposit in the form of bonds of fidelity companies. That seems to have been a mere precaution for greater certainty. We are therefore of the opinion that the state was entitled to be paid the balance of the canal fund on deposit in preference to any other creditor holding no specific lien upon the assets of the trust company. All the facts are before the court in the referee's report and they cannot be changed. We are therefore in a position to make the order which the Special Term should have made and to enter an order directing payment in accordance with this opinion. Settle order on notice. All concur.