BLUE, J.
 

 This slip and fall case raises an important question involving the ability of a municipal ordinance of general application to impose a duty upon the state. The state commissioner of transportation, J. William Burns (commissioner), contends that he had no duty to keep a sidewalk abutting state property free of ice and snow in spite of a municipal ordinance that on its face imposes such a duty upon all abutting landowners and that he is consequently protected by the doctrine of sovereign immunity. For the reasons set forth below, his motion to dismiss must be granted.
 

 The complaint consists of two counts. The first count is against the city of Hartford (city). The second count, the one in question here, is against the commissioner. That count alleges that on February 16, 1993, the plaintiff, Maura Gould, fell on an icy sidewalk in Hartford, suffering various injuries. The sidewalk is described as “the public sidewalk located on the south side of Asylum Avenue at a point between Hurlburt Street and the entrance/exit ramp of 1-84.” The count further alleges that the state department of transportation (department) was the owner of the land abutting the sidewalk where the plaintiff was injured and that the sidewalk itself “was a public highway sidewalk included in the state highway system.” The count alleges two different duties of the commissioner to remove ice and snow from the sidewalk. First, the commissioner assertedly
 
 *393
 
 has a duty to care for the sidewalk in question because it is “included in the state highway system.” Second, a Hartford municipal ordinance, discussed in detail below, gives owners of land in the city a duty of care with respect to the presence of ice and snow on public sidewalks abutting their properties and imposes liability for injuries resulting from a breach of that duty.
 

 The commissioner has filed a motion to dismiss asserting lack of subject matter jurisdiction. Practice Book § 143 (1). In support of his motion, he has submitted the affidavit of Victor J. LaBarre, the department’s maintenance district manager for the Hartford area. LaBarre states that “[t]he sidewalk located on the south side of Asylum Avenue at a point between Hurlburt Street and the entrance/exit ramp of 1-84 is not part of the state highway system.” The plaintiff has not responded to this affidavit. No additional evidence was offered at the hearing on the motion.
 

 Absent a waiver, sovereign immunity shields the state and its agencies from suit.
 
 Herzig v. Horrigan,
 
 34 Conn. App. 816, 818-19, 644 A.2d 360 (1994). Sovereign immunity is jurisdictional in nature.
 
 Amore
 
 v.
 
 Frankel,
 
 228 Conn. 358, 364, 636 A.2d 786 (1994). Indeed, “the terms of [the state’s] consent to be sued in any court define that court’s jurisdiction to entertain the suit.”
 
 United States
 
 v.
 
 Sherwood,
 
 312 U.S. 584, 586, 61 S. Ct. 767, 85 L. Ed. 1058 (1941). It is, therefore, necessary to decide whether the state’s immunity has been waived.
 

 The parties agree that if any waiver is to be found in the present case it is in the defective highway statute, General Statues § 13a-144. That statute provides in relevant part that “[a]ny person injured in person or property through the neglect or default of the state or any of its employees by means of any defective highway, bridge or sidewalk which it is the duty of the commissioner of transportation to keep in repair . . . may
 
 *394
 
 bring a civil action to recover damages sustained thereby against the commissioner in the superior court. . . .” General Statutes § 13a-144. The word “duty” is the brass ring that both parties wish to capture. The plaintiff contends that two different duties are implicated here. First, she contends that the commissioner had a duty to keep the sidewalk in question in repair because it is “included in the state highway system.” Second, she relies on the municipal ordinance placing a duty on abutting landowners to keep sidewalks free of ice and snow. The commissioner denies the existence of both duties.
 

 It is important to recognize that these two alleged duties are analytically distinct. The first, seeking to define the sidewalk as part of the state highway system, has nothing to do with either the city ordinance or the ownership of the abutting land. The second, relying on the city ordinance, has nothing to do with the state highway system. Indeed, if the ordinance is read in the way that the plaintiff advocates, it applies to sidewalks abutting
 
 all
 
 state-owned properties, including many properties having nothing to do with the state highway system. These asserted duties will now be considered in turn.
 

 The plaintiffs first assertion, that the sidewalk in question is part of the state highway system, is easily refuted on this record. The commissioner has filed an affidavit that the sidewalk is not part of the state highway system. The plaintiff had an opportunity, pursuant to Practice Book § 143, to file counteraffidavits disputing this assertion, but no counteraffidavits have been submitted. Consequently, the record consists of a barren complaint challenged by an uncontradicted affidavit. This leaves “the plaintiff unable as a matter of law to state a cause of action that the court can hear . . . .”
 
 Amore
 
 v.
 
 Fvankel,
 
 supra, 228 Conn. 368 n.8. The plaintiff is “obligated to provide some factual allegation” that
 
 *395
 
 would bring the complaint within § 13a-144 under her first theory. Id., 369. She simply has not done so.
 

 The plaintiff relies on the doctrine that “[w]hether there is a defect in such proximity to the highway so as to be considered ‘in, upon, or near the traveled path’ of the highway must be determined on a case-by-case basis after a proper analysis of its own particular circumstances, and is generally a question of fact for the jury . . . .”
 
 Baker
 
 v.
 
 Ives,
 
 162 Conn. 295, 300, 294 A.2d 290 (1972), quoting
 
 Hewison
 
 v.
 
 New Haven,
 
 34 Conn. 136, 142 (1867). In the present case, however, the plaintiff has specifically alleged that she fell on a sidewalk. Given this allegation, the defendant must prevail as a matter of law. The law involving the state’s duty of care with respect to sidewalks associated with its highways is somewhat distinctive and is by now well established.
 

 The law pertaining to sidewalks associated with highways is a product of the respective histories of the defective highway statute, § 13a-144 (applicable to the state), and the defective road statute, General Statutes § 13a-149 (applicable to municipalities). The defective road statute is by far the more ancient of the two, having its origin in a 1672 enactment of the Connecticut colony. That statute ordered “[t]hat the several Townships within this Colony shall keep in sufficient repair all the High-wayes and Bridges within their Townships.” The Book of the General Laws For the People Within the Jurisdiction of Connecticut (1672) p. 7. It further ordered that “if any person at any time loose his life through defect or insufficiency” of a bridge or highway, the town in which the defect was located would pay a fine of 100 pounds to the victim’s family and “if any person loose a Limb, break a Bone, or receive any other Bruise, or breach in any part of his body through such defect” the town would “pay to the party so hurt double damage.” Id. The 1821 statutes altered the language of the statute to refer to “any . . . defective bridge or
 
 *396
 
 road” and changed the requirement of double damages to “just damages.” Public Statute Laws of the State of Connecticut, tit. 48, § 4, p. 266 (1821).
 

 The question of the status of sidewalks under the defective road statute first came before the Connecticut Supreme Court in 1861. The court held that it had “no doubt” that sidewalks are “a part of the ‘road’ ” for purposes of the statute.
 
 Manchester
 
 v.
 
 Hartford,
 
 30 Conn. 118, 120 (1861). When the ancestor of our present defective highway statute was first enacted in 1925, it contained the identical “defective road or bridge” language found in the defective road statute. Public Acts 1925, c. 263, § 47, pp. 4098-99. But when the question of the status of sidewalks arose with respect to this latter statute, a different result obtained.
 

 The Supreme Court arrived at this distinction in
 
 Moleske v. MacDonald,
 
 109 Conn. 336, 146 A. 820 (1929). The plaintiff in
 
 Moleske
 
 fell on a sidewalk running along a highway maintained by the state highway commissioner and sued the state under the 1925 act. The court acknowledged that it had long construed “road” to include sidewalks in the context of the defective road statute. But, the court stated, the same word “is also often used in a more restricted sense, as applying only to that portion actually used for vehicular traffic.” Id., 339. In construing the defective highway statute, the court looked to the legislative purpose. It explained that “[p]rimarily, the governmental duty of building and maintaining public highways rests upon the State itself, but it may delegate this duty to agents of its own designation.” Id. Since 1672, this duty has been placed upon the towns by the defective road statute. The same policy applies “to the construction and maintenance of sidewalks in towns and the duty is imposed upon each town as to sidewalks within its own limits.” Id., 340. The defective highway act did not alter this policy. The court concluded that “[w]e discover no purpose and
 
 *397
 
 we conceive it contrary to the policy of the State reflected in its legislation, to interfere with or modify the obligations of towns for any roads or other avenues of travel, which are of only local concern. Sidewalks are of this character. They serve local convenience almost wholly and have no relation to, nor do they contribute to, the facilitating of that public travel which the State aims to serve by the establishment of state aid and trunk line roads between the towns and across the State.” Id., 341.
 

 Moleske
 
 remains the law today. Significantly, the legislature has underlined the correctness of this approach by specifically designating a limited number of sidewalks that are to be maintained by the commissioner. These include sidewalks that the commissioner has constructed or reconstructed on bridges; General Statutes § 13a-91 (a); and “[t]he sidewalks on the bridges across the Connecticut River at Thompsonville and Warehouse Point . . . .” General Statutes § 13a-92. The commissioner is also statutorily required to “maintain any sidewalk, including the removal of snow and ice, abutting property acquired for highway purposes, from the date of acquisition until the section of highway for which the property was acquired is completed.” General Statutes § 13a-258. If one of these sidewalks is defective, a person injured by the defect may appropriately sue the commissioner under § 13a-144. The sidewalk in question in the present case, however, is not alleged to be such a sidewalk. The commissioner had no duty to maintain it. The unrebutted affidavit submitted by the commissioner leaves the complaint barren of any facts that could plausibly be submitted to a jury on the plaintiffs first theory. That theory cannot be sustained as a matter of law.
 

 While the plaintiffs first theory is controlled by the existing precedent, her second theory takes us into uncharted waters. A municipal ordinance of general
 
 *398
 
 applicability requires abutting landowners to remove snow and ice from sidewalks. While the commissioner correctly points out that only statutory duties can bind the state; see
 
 Gagne
 
 v.
 
 National Railroad Passenger Corp.,
 
 26 Conn. App. 74, 78-79, 597 A.2d 836, cert. denied, 200 Conn. 931, 599 A.2d 382 (1991); that observation is of limited help here because, as it happens, the ordinance in question is authorized by state law. General Statutes § 7-163a. In order to resolve this problem, both the authorizing statute and the ordinance must be considered in some detail.
 

 As has already been discussed, the traditional policy of the state has been to make municipalities responsible for the maintenance and repair of sidewalks within their respective jurisdictions. In 1981, the legislature changed this policy with respect to the presence of ice and snow on public sidewalks by enacting § 7-163a. That statute provides in relevant part: “(a) Any town, city, borough, consolidated town and city or consolidated town and borough may, by ordinance, adopt the provisions of this section.
 

 “(b) Notwithstanding the provisions of section 13a-149 or any other general statute or special act, such town, city, borough, consolidated town and city or consolidated town and borough shall not be hable to any person injured in person or property caused by the presence of ice or snow on a public sidewalk unless such municipality is the owner or person in possession and control of land abutting such sidewalk, other than land used as a highway or street, provided such municipality shall be liable for its affirmative acts with respect to such sidewalk.
 

 “(c) (1) The owner or person in possession and control of land abutting a public sidewalk shall have the same duty of care with respect to the presence of ice
 
 *399
 
 or snow on such sidewalk toward the portion of the sidewalk abutting his property as the municipality had prior to the effective date of any ordinance adopted pursuant to the provisions of this section and shall be liable to persons injured in person or property where a breach of said duty is the proximate cause of said injury. . . .” General Statutes § 7-163a.
 

 The city subsequently adopted the provisions of § 7-163a by ordinance. Hartford Municipal Code § 31-150 (1990). That ordinance provides as follows: “(a) State law adopted. The provisions of section 7-163a of the general statutes are hereby adopted, and are set forth in subsections (b) and (c).
 

 “(b) Liability of city. Notwithstanding the provisions of section 13a-149 of the general statutes or any other general statute or special act, the city shall not be liable to any person injured in person or property caused by the presence of ice or snow on a public sidewalk unless the city is the owner or person in possession and control of land abutting such sidewalk, other than land used as a highway or street provided the city shall be liable for its affirmative acts with respect to such sidewalk.
 

 “(c) Liability, duty of abutting landowner. (1) The owner or person in possession and control of land abutting a public sidewalk shall have the same duty of care with respect to the presence of ice or snow on such sidewalk toward the portion of the sidewalk abutting his property as the municipality had prior to the effective date of this section adopted pursuant to the provisions of section 7-163a of the general statutes and shall be liable to persons injured in person or property where a breach of such duty is the proximate cause of such injury. . . .” Hartford Municipal Code § 31-150 (1990).
 

 Both the statute and the ordinance facially apply to all owners of land abutting public sidewalks. The state owns the land abutting the sidewalk in question here.
 
 *400
 
 Does this mean, by force of syllogism, that both the statute and the ordinance apply to the state? That is, essentially, the plaintiffs argument. The state, on the other hand, claims that the municipal ordinance here— notwithstanding its statutory authorization — is a command of an inferior sovereign that cannot bind the state. Neither position is fully persuasive.
 

 To begin with, the proposition that a lesser sovereign can never exercise control over a greater one; see, e.g.,
 
 Kentucky Institution for Education of Blind
 
 v.
 
 Louisville,
 
 123 Ky. 767, 774, 97 S.W. 402 (1906); while largely true, is not entirely true. Speeding laws are an obvious example. Suppose that a municipality sets a speed limit on a city street; see General Statutes § 7-148 (c) (7) (B) (ii); and a state employee in a state car on state business drives down the street exceeding that limit. There can be no doubt that a city policeman can arrest the state employee for speeding. It was established at an early date in American history that even federal employees conducting federal business are bound by municipal speeding laws.
 
 United States
 
 v.
 
 Hart,
 
 26 F. Cas. 193 (C.C.D. Pa. 1817) (No. 15,316) (Washington, J.); see
 
 Commonwealth
 
 v.
 
 Closson,
 
 229 Mass. 329, 118 N.E. 653 (1918).
 

 A speeding case is not, however, truly analogous to this case. A speeding state employee would be prosecuted and sentenced in his individual capacity. The state itself, for obvious reasons, could not be prosecuted. Here, in contrast, the plaintiff seeks to place the burden of financial responsibility directly on the
 
 state.
 
 The law is clear that this cannot be done without the state’s express consent. Our Supreme Court explained over a century ago that “statutes . . . are not to be construed to embrace the government or sovereignty unless by express terms or necessary implication such appears to have been the clear intention of the legislature, and the rights of the government are not to be impaired by
 
 *401
 
 a statute unless its terms are clear and explicit, and admit of no other construction.”
 
 State
 
 v.
 
 Shelton,
 
 47 Conn. 400, 404-405 (1879); see
 
 Lacasse
 
 v.
 
 Burns,
 
 214 Conn. 464, 468, 572 A.2d 357 (1990), and authorities cited therein. This rule of construction applies to municipal ordinances as well as state statutes.
 
 In re Means,
 
 14 Cal. 2d 254, 257-58, 93 P.2d 105 (1939);
 
 Paulus
 
 v.
 
 St. Louis,
 
 446 S.W.2d 144, 150 (Mo. App. 1969). The rule, as
 
 Shelton
 
 explains, is deeply rooted in the history and structure of our government.
 
 State
 
 v.
 
 Shelton,
 
 supra, 405.
 

 A moment’s reflection will confirm that the ordinance in question here cannot sensibly apply to the state in the absence of the state’s express consent. While it is beguiling to think of a municipal ordinance requiring the removal of ice and snow from the sidewalks as a public safety measure akin to municipal speeding laws, in reality it is not. Speeding laws apply only to people who are driving anyway, and the limitations they impose upon drivers are minor and (at least in theory) reasonable. But the ordinance in question here, requiring abutting landowners to remove ice and snow from sidewalks, is a vastly different type of command. The ordinance imposes both physical and financial burdens, and these burdens are substantial. To comply with this ordinance, a landowner must physically remove ice and snow from abutting sidewalks, and bear legal liability for injuries caused by a breach of this duty. This is a significant burden when applied to a private landowner, but it is even more burdensome when applied to the state. Logistically, especially in the city of Hartford, the ordinance would require a vast undertaking on the part of the state. In order to comply with this municipal command, the state would be obliged to identify all of the sidewalks abutting its many properties and employ and mobilize a sizeable work force to clear them of ice and snow. A duty of this description cannot be imposed
 
 *402
 
 upon the state without its explicit authorization. Id. The same is plainly true of the legal burden imposed by the ordinance. Hartford Municipal Code § 31-150 and General Statutes § 7-163a, phrased as they are in general terms, are insufficient to impose such a duty. Moreover, the legislative history of § 7-163a makes it clear that the legislature intended to transfer the then existing municipal obligation to
 
 private
 
 landowners. See 24 S. Proc., Pt. 10, 1981 Sess., p. 3274, remarks of Senator Eugene A. Skowronski; 24 H. Proc., Pt. 12, 1981 Sess., p. 3773, remarks of Representative Alfred J. Onorato.
 

 For the aforementioned reasons, the commissioner had no duty to repair or to maintain the sidewalk in question. The plaintiff has not alleged sufficient facts to comport with the legislative waiver to the doctrine of sovereign immunity contained in § 13a-144. See
 
 Amore
 
 v.
 
 Frankel,
 
 supra, 228 Conn. 365. The second count of the complaint must consequently be dismissed.