[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTION TO DISMISS
Petitioner seeks money damages and enforcement of an order of the hearing officer[1] of the Commission on Human Rights and Opportunities (CHRO).
The respondent (DMV) moves to dismiss because (1) as to money damages the doctrine of sovereign immunity protects the respondent; (2) the decision sought to be enforced is not final and; (3) CHRO has not complied with Conn. Gen. Stats.46a-95(b).
Facts
Specifically, on or about November 1, 1985, the DMV, in accordance with the then-current Regulation of Connecticut State Agencies 14-44-1, denied a public service license to Mr. Robert J. Buckley (Buckley), the CHRO Complainant, because he was an insulin dependent diabetic. On or about January 30, 1986 Buckley filed a complaint with CHRO claiming discrimination in denial of that license "in violation of sections . . . 46a-69, 46a-73(a) and (b) and 46a-58(a)."[2]
Buckley was the president of Buckley Limousine, Inc. (Corporation) and worked as a driver for it. On September 18, CT Page 1075 1987, approximately two years later, the Department amended its regulation to permit a case-by-case evaluation of license applications and issued Buckley a public service license. That license has been renewed thereafter.
Buckley sought to recover sums paid to Brian Buckley and Pearce O'Hagan, two replacement drivers hired by the Corporation as independent contractors who assumed driving duties with the Corporation during the time he was refused a public service license. In addition, he sought interest on those sums.
On January 16, 1991 and March 22, 1991, CHRO held hearings on this matter. On November 4, 1991, CHRO issued its Decision and Order finding that DMV committed a discriminatory practice in violation of Conn. Gen. Stats.46a-58 and 46a-73, when it denied Buckley a public service license.
DMV told Buckley's counsel that it did not consider the Decision to be final because the hearing officer failed to make a determination as to damages, but merely set guidelines for making such a determination.
DMV neither filed an appeal of the Order nor paid any money to Buckley.
On or about September 25, 1992 CHRO began this action.
Law
CHRO brings this petition "pursuant to Conn. Gen. Stat.46a-95."
I. Money Damages
The claims for money damages is made under Conn. Gen. Stats. 46a-86(c) which reads as follows:
 (c) In addition to any other action taken hereunder, upon a finding of a discriminatory practice prohibited by section 46a-58, 46a-59, 46a-64 or 46a-64c, the presiding officer shall determine the damage suffered by the complainant, which damage shall include but not be limited to the expense incurred by the complainant CT Page 1076 for obtaining alternate housing or space, storage of goods and effects, moving costs and other costs actually incurred by him as a result of such discriminatory practice and shall allow reasonable attorney's fees and costs.
The referenced section 46a-58 in pertinent part reads as follows:
 Sec. 46a-58. (Formerly Sec. 53-34). Deprivation of rights. Desecration of property. Cross burning. Penalty. (a) It shall be a discriminatory practice in violation of this section for any person to subject, or cause to be subjected, any other person to the deprivation of any rights, privileges or immunities, secured or protected by the constitution or laws of this state or of the United States, on account of religion, national origin, alienage, color, race, sex, blindness or physical disability.
For the purposes of that section physically disabled is described in Conn. Gen. Stats. 1-1f(b) as follows:
 (b) An individual is physically disabled if he has any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness, including, but not limited to, epilepsy, deafness or hearing impairment or reliance on a wheelchair or other remedial appliance or device.
(And also see Conn. Gen. Stats. 96a-51(15)).
The hearing officer's opinion and award recognizes as "the pivotal statutes" Conn. Gen. Stats. 46a-73, 14-36(e) and 14-44. In her discussion she makes it clear that the issue . . . squarely presented here is whether the regulation [14-44-1(b)(3)] complies with . . . Section 46a-73(a)." That subsection reads as follows:
 Sec. 46a-73. (Formerly Sec. 4-61f). Discrimination in state licensing and charter procedures prohibited. (a) No state department, board or agency may grant, deny or revoke the license or charter of any person on the grounds of race, color, religious creed, sex, age, CT Page 1077 national origin, ancestry, mental retardation or physical disability, including, but not limited to, blindness, unless it it shown by such state department, board or agency that such disability prevents performance of the work involved.
A denial under that subsection is a discriminatory practice, Conn. Gen. Stats. 46a-58(a), and thus the hearing officer "shall determine the damage suffered by the complainant . . . and other costs actually incurred by him." The doctrine of sovereign immunity exists in Connecticut. Fetterman v. University of Connecticut,192 Conn. 539. It admits of three exceptions.
A. Waiver
The waiver by the state of its sovereign immunity must be express and by legislation showing consent to be sued. White v. Burns, 213 Conn. 307, 312. "It may be stated we think as a universal rule on the construction of statutes limiting rights, that they are not to be construed to embrace the government or sovereignty unless by express terms or necessary implication such appears to have been the clear intention of the legislature, and the rights of the government are not to be impaired by a statute unless its terms are clear and explicit, and admit of no other construction." State of Connecticut v. Shelton, 47 Conn. 400,404-405.
B. Constitutional Protection
Buckley in his complaint did mention violation of "Article XXI of the Amendments to the Constitution of the State of Connecticut." However, when the hearing officer recited Buckley's claims in her Memorandum of Decision she did not mention that claim. She may be said to mention it in paragraph C of her "Statement of the Issues". But the Memorandum, when read as a whole, never rules on any Connecticut constitutional issue. In addition, Amendment Article XXI relied upon prohibits the denial of equal protection, inter alia, to a physically handicapped person. This does not deal with money damages permitted by a statute.
C. Statutory Excess CT Page 1078
In those matters in which it is claimed that the state "is proceeding under an unconstitutional statute or in excess of [its] statutory authority" the doctrine may be outweighed by claimants' rights. Horton v. Meskill, 172 Conn. 615, 624. Of course, the regulation under which DMV was proceeding here is even more subject to that exception, it being at best only entitled to be given "the force and effect of statute". Fusco-Amatreda Co. v. Tax Commissioner, 168 Conn. 597, 604.
Thus, the complaint to CHRO does fulfill one of the exceptions to the doctrine. However, it does not necessarily follow that the money damage issue is not subject to the doctrine. As to Conn. Gen. Stats. 46a-86(c) we still must have "a statute that by its clear and explicit terms includes the sovereign and admits of no other construction. State of Connecticut v. Shelton, 47 Conn. 400, 404-405.
It takes a bit of chasing but that does not prevent a finding that all told the legislative intent is clear and explicit. First, Buckley is physically disabled. Second, under Conn. Gen. Stats. 46a-58 it is a discriminatory practice for any person to deprive a disabled person of any rights he may have under any of our statutes because of a physical disability. Third, the definition of a "person" is, inter alia, "the state and all political subdivisions and agencies thereof". That definition is as "used in chapter [814c]". Conn. Gen. Stats. 46a-51 through 46a-99. Fourth, Buckley was deprived of his rights to a public service license under Conn. Gen. Stats. 14-44 because of his physical disability. Fifth, that deprivation, being a discriminatory practice, allows a money damage claim to be made against the "respondent". Conn. Gen. Stats. 46a-86(c) Sixth, claims are made against persons, Conn. Gen. Stats.46a-82, who become respondents upon being served with the complaint. Conn. Gen. Stats. 46a-83. Seventh, CHRO has a duty to proceed in all cases of discriminatory practices as provided in . . . chapter [814c]". It is clear that the damages section applies to DMV and that as to it there is a clear waiver of sovereign immunity.
II. Finality
The hearing officer sets out the claim for damages as follows: "Specifically, the CHRO seeks to recover the business expenses incurred by complainant's company, a CT Page 1079 corporation, in the form of wages[3] paid to temporary replacement drivers for the period he was denied his [public service] license". As the decision makes clear all payments to the replacement drivers were made by the corporation. The decision quite clearly recognized that Buckley and the corporation are two separate entities and cites Vogel v. New Milford, 161 Conn. 490, which case reversed a trial court for concluding that a "corporate form may be disregarded" without facts to support it. id. 494. As the hearing officer says, "His complaint is individually based and the statement for relief is personal to him".
The Order of the presiding officer is as follows:
ORDER
 Section 46a-86(c) invests the hearing officer with broad discretion to fashion types of relief other than those types specifically mentioned, however, it limits such relief to the damages actually incurred by the Complainant. Chestnut Realty v. CHRO, supra at 757. The claim for damages in the instant case is more appropriately one of loss of income in the form of a share of the profits of the corporation, as measured by the value of the Complainant's services to the business as a driver. The amount paid to replacement drivers is an indication of the market value of those services. Dowling v. Hebert, 146 Conn. 516, 152 A.2d 642 (1959), citing Lashin v. Corcoran, supra.
 The amount shall be reduced by what the Complainant saved in state and federal income tax liability for the amounts paid out. Further, Respondent's liability for damages shall not extend beyond the effective date of the amended regulation. Interest shall be calculated at the statutory rate in effect for each income year and applied to the amount determined to be his net annual income loss.
Questions abound. Did the corporation ever pay a dividend? What was the record of growth of shareholders' equity in the corporation for the several years prior to the use of the replacement drivers as compared with that during the period of their use? Did Buckley's salary change? Did his bonus, if any, change? Did Buckley take vacations from CT Page 1080 driving before the license loss? — etc., etc.
CHRO states in its memorandum of November 16, 1992, page 7, that "the order was precise as to how damages were to be calculated and evidence exists from which the damages can be calculated per the hearing officer's instructions".
It concludes that "only mathematical computations" are left to be done. However, that memorandum neither performs those "mathematical computations" nor answers the questions this court has. This Order is not final as to the damages suffered by Buckley individually.
 III. Compliance with Conn. Gen. Stats. 46a-95(b)
This is not an appeal under Conn. Gen. Stats. 4-183.
This matter was heard on October 26, 1992 at which time the court gave CHRO three weeks to file its brief, i.e., to November 16, 1992. CHRO memorandum was timely filed.
On November 18, 1992 CHRO filed its "Certification of Record".[4] It is DMV's position that the filing of the record on that date fails to comply with Conn. Gen. Stats.46a-95, under which this matter is brought. That statute reads in pertinent part as follows:
 Sec. 46a-95. Enforcement by superior court or order of presiding officer. (a) The commission may, through the attorney general or, where the respondent is an agency or officer of the state, the commission counsel, petition the court within the judicial district wherein any discriminatory practice occurred or in which any person charged with discriminatory practice resides or transacts business, for the enforcement of any order issued by a presiding officer officer under the provisions of this chapter and for appropriate temporary relief or a restraining order.
 (b) The commission shall certify and file in the court a transcript of the entire record of the proceedings sought to be enforced including the pleadings and testimony upon which the order was made and the finding and orders of the presiding officer. CT Page 1081
 (c) Within five days after filing such petition in court, the commission shall cause a notice of the petition to be sent by registered or certified mail to all parties or their representatives.
 (d) The court shall: (1) Have jurisdiction of the proceedings and of the questions determined thereon, (2) have the power to grant such relief by injunction or otherwise, including temporary relief, as it deems just and suitable, and, (3) enter, based on the pleadings, testimony and proceedings set forth in the transcript, a decree enforcing, modifying and enforcing as so modified, or remanding to the commission or presiding officer, in whole or in part, any order of the commission or presiding officer.
Not only does that section demand that petitions filed under it be heard expeditiously but Conn. Gen. Stats.46a-96 requires that all hearings under the entire chapter "shall take precedence over all other matters." It thus appears that the legislature wanted some speed in the processing of these petitions.
As applied here our statute, in subsection alphabetical order a), permits CHRO to "petition the court . . . for the enforcement of [the] order"; b) requires CHRO to "certify and file in the court a transcript of the entire record of the proceedings sought to be enforced; c) within five days after filing the petitions in court CHRO must send notice of the petition to all parties or representatives; and d) the court has jurisdiction and may "enter, based on the pleadings, testimony and proceedings set forth in the transcript, a decree [in regard to the order]."
From this it is easy to infer that without the transcript the court never gets jurisdiction. This court so holds. However, is a late filing of the transcript equal to non-filing for jurisdictional purposes? This is not a question of a partial or inadequate filing, cf. Tautic v. Pattillo, 41 Conn. Sup. 169; P.B. Forms 101.13 but rather of a "late" filing.
If the legislature was so seriously concerned with the time of filing of the transcript they would have made rules CT Page 1082 similar to those imposed by Conn. Gen. Stats. 52-190a in regard to providing a certificate of good faith. That statute provides that no medical malpractice action may be brought until there is a reasonable inquiry to determine that there are good faith grounds to believe that negligence has occurred. In addition, that statute requires that the plaintiff's complaint "shall contain a certificate, on a form prescribed by the rules of the superior court, . . . that such inquiry gave rise to a good faith belief" that the negligence occurred. Those requirements make it clear that without such certificate the court has no jurisdiction. Bencivenga et al. v. Brett et al., 4 CSCR 193 (1989, Flanagan, J.).
In the instant case a transcript has been filed, albeit late. But this is a remedial statute and as such must be "liberally construed in favor of those whom the legislature intended to benefit." Hartford Fire Ins. Co. v. Brown,164 Conn. 497, 503.
The motion to dismiss because of the state's sovereign immunity and late filing of the transcript is denied.
There is no finality in regard to the damages due and therefore the court orders the matter remanded to the presiding officer for a detailed finding of the earnings to be awarded Robert J. Buckley only and the factual bases therefore.
N. O'NEILL, J.