[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On February 5, 1992, plaintiffs, Patricia A. Sedlak and Al Sedlak, filed this action in seven counts against defendants Michael Lotto and BIC Corporation. Plaintiffs allege the following facts. On April 17, 1978 BIC hired plaintiff Patricia A. Sedlak. In early 1990 and continuing for almost a year, Lotto, plaintiff's supervisor at BIC, began to "repeatedly, persistently and intentionally subject plaintiff to hostile, demeaning and frightening treatment" as more specifically described in the complaint. Plaintiffs assert that defendant BIC knew of Lotto's actions but failed to remedy the situation.
Plaintiffs claim that the defendants' actions caused plaintiff Patricia A. Sedlak "extreme anxiety, fear, humiliation and distress." Count one of the complaint is an action for civil assault against defendant Lotto. Count two sounds in defamation against both defendants. In count three plaintiffs allege invasion of privacy and false light against both defendants. In count four plaintiffs assert intentional infliction of emotional distress against both defendants. Count five, in which plaintiffs alleged discrimination in violation of General Statutes 31-290a(a) against defendant BIC, was dismissed on April 27, 1992 by the court, Fracasse, J., for lack of subject matter jurisdiction. In count six plaintiffs allege sex discrimination in violation of Connecticut's Fair Employment Practices Act (hereinafter "CFEPA") and Title VII of the Civil Rights Act of 1964 as amended, against both defendants. In count seven plaintiffs allege loss of consortium, on behalf of plaintiff Al Sedlak, against both defendants. Plaintiffs seek the following relief:
1. A Temporary and Permanent Injunction, ordering the Defendants to cease their assaultive, defamatory and discriminatory treatment, acts and conduct towards Plaintiff and other women employees.
2. A Temporary and Permanent Injunction, ordering the Defendants to publicly retract all of their defamatory statements about Plaintiff Patricia Sedlak. CT Page 3314
3. Lost earnings, pay and benefits with statutory interest thereupon for Plaintiff Platricia (sic) Sedlak.
4. Compensatory damages for both Plaintiffs.
5. Punitive damages for both Plaintiffs.
6. Attorney's fees and costs of suit as allowed by statute.
7. Such other and further relief as in law or equity may appertain.
On March 5, 1992, defendant Lotto filed an appearance. On April 2, 1992, Lotto filed a motion to dismiss on the following grounds.
1. The first, second, third, fourth and seventh counts of the Complaint should be dismissed because Section 301 of the Labor Management Relations Act preempts these causes of action.
2. The first, second, third, fourth and seventh counts of the Complaint should be dismissed because those causes of action are barred by the exclusivity provision of the Workers' Compensation Act, Conn. Gen. Stat. 31-284 et seq.
3. The sixth count of the Complaint should be dismissed because Lotto was not named as a respondent in the plaintiff's complaint to the Commission on Human Rights and Opportunities ("CHRO"), nor in the release of the CHRO authorizing suit against co-defendant BIC pursuant to Public Act No. 91-331.
4. The sixth count should be dismissed because Lotto was not named as a respondent in the plaintiff's complaint to the Equal Employment Opportunity Commission ("EEOC"), nor in the EEOC's "right to sue letter" authorizing suit against co-defendant BIC pursuant to Title VII of the Civil Rights Act of 1964.
5. The Complaint as a whole should be dismissed because the plaintiff has failed to place her demand for relief "on a separate page of the complaint," and has failed to include in the Complaint any statement of the amount, legal interest or property in demand, exclusive of interest and costs, as required by both Practice Book 131 and Conn. Gen. Stat. 52-91. CT Page 3315
In support of his motion defendant Lotto filed a memorandum of law and a copy of the plaintiff's original and amended complaints with the Commission On Human Rights and Opportunities (hereinafter "CHRO"). On April 29, 1992, plaintiffs filed a memorandum in opposition to the motion to dismiss. On April 30, 1992, plaintiffs filed the affidavit of plaintiff Patricia A. Sedlak and a copy of "The Agreement between BIC." On May 6, 1992, plaintiffs filed answers to requests for admission.
1. Labor Management Relations Act
In his motion, defendant Lotto moves that the court dismiss counts one, two, three, four, and seven of plaintiffs' complaint in that section 301 of the Labor Management Relations Act preempts these causes of action. Defendant Lotto argues that the resolution of plaintiffs' claims requires interpretation of the collective bargaining agreement between defendant BIC and plaintiff's union because plaintiff's conditions of employment are governed by the agreement. Defendant Lotto argues that resolution of the plaintiffs' claims are substantially dependent upon analysis of the terms of the collective bargaining agreement.
In opposition, plaintiffs argue that no article of the collective bargaining agreement relates to the facts of this case and therefore, do not require interpretation of the agreement.
The Labor Management Relations Act ("LMRA") 301, 29 U.S.C. § 185
provides in pertinent part:
 Suits for violation of contracts between an employer and a labor organization representing the employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties. . . .
29 U.S.C. § 185(a).
In Allis-Chalmers Corp. v. Lueck, 471 U.S. 202,105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) the United States Supreme Court stated that "State-law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties, are preempted CT Page 3316 by those agreements." Allis-Chalmers, 471 U.S. 213,105 S.Ct. 1912. The court focused on whether the respondent's tort action for breach of the duty of good faith "confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract. If the state tort law purports to define the meaning of the contract relationship, that law is preempted." Id. The court held that the resolution of the respondent's tort action, claiming bad-faith handling of an insurance claim under a disability insurance plan included in a collective bargaining agreement, is substantially dependent upon analysis of the terms of the collective bargaining agreement and therefore should be dismissed as preempted by federal labor contract law or should be treated as a 301 claim. Id., 1916.
In the more recent United States Supreme Court case of Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399,108 S. CT. 1877 (1988) an employer discharged an employee for filing a false workers' compensation claim. The employee instituted a state tort action for retaliatory discharge. The United State's Supreme Court in finding that the state tort remedy was not preempted by 301 stated:
 "`[T]o show retaliatory discharge, the plaintiff must set forth sufficient facts from which it can be inferred that (1) he was discharged or threatened with discharge and (2) the employer's motive in discharging or threatening to discharge him was to deter him from exercising his rights under the Act or to interfere with his exercise of those rights.' Horton v. Miller Chemical Co., 776 F.2d 1351, 1356 (CA 7 1985) (summarizing Illinois state court decisions), cert. denied 475 U.S. 1122, 106 S.Ct. 1641, 90 L.Ed.2d 186 (1986); see Gonzalez v. Prestress Engineering Corp., 115 Ill.2d 1, 14 Ill. Dec. 751, 503 N.E.2d 308 (1986). Each of these purely factual questions pertains to the conduct of the employee and the conduct and motivation of the employer. Neither of the elements requires a court to interpret any term of a collective-bargaining agreement. To defend against a retaliatory discharge CT Page 3317 claim, an employer must show that it had a nonretaliatory reason for the discharge, cf. Loyola University of Chicago v. Illinois Human Rights Comm'n., 149 Ill. App.3d 8, 102 Ill. Dec. 746, 500 N.E.2d 639 (1986); this purely factual inquiry likewise does not turn on the meaning of any provision of a collective-bargaining agreement. Thus, the state-law remedy in this case is `independent' of the collective-bargaining agreement in the sense of `independent' that matters for 301 preemption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement.
 ". . . [E]ven if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is `independent' of the agreement for 301 pre-emption purposes."
Id., 486 U.S. at ___, 108 S.Ct. at 1882-83. The Court's decision in Lingle, although it did not overrule Allis-Chalmers, does appear to lessen the preemptive effect of 301. Accordingly, the court in the present case does apply the more recent and less preemptive analysis of Lingle.
A. Count One — Civil Assault
"A civil assault is the intentional causing of imminent apprehension of harmful or offensive contact on another Restatement (Second), Torts 21." DeWott v. John Hancock Mutual Life Ins. Co., 5 Conn. App. 590, 594, 501 A.2d 768 (1985). To defend against a civil assault claim, a defendant must show that he was acting in self-defense. See Hanauer v. Coscia, 157 Conn. 49,54, 44 A.2d 611 (1968). "The permissible degree of force used in self-defense depends on that which is necessary, under all the circumstances, to prevent an impending injury." Id.
Plaintiffs allege that the defendants subjected plaintiff to the following behavior: CT Page 3318
a. Made hostile, aggressive, disparaging, demeaning and sexist statements to her personally and before others, about Plaintiff's age, body, appearance, intelligence, personal habits, skills and abilities as a worker and as a woman;
b. Made threatening statements insinuating that Plaintiff would lose her job;
c. Made repeated threats that plaintiff's hours would be changed because he knew that Plaintiff needed to work the second shift because of babysitting arrangements;
d. Placed Plaintiff in physical danger on the job by coming up behind her to startle her while she was on a forklift attempting to cause an accident, and sending Plaintiff out to do errands in heavy traffic, and, when plaintiff asked if she could wait for safer traffic conditions, indicating that it would not matter to him if she were hurt and had to be replaced as a worker, causing Plaintiff to fear physical injury;
e. Made rude, obscene and embarrassing comments about Plaintiff in front of co-workers, truck drivers, and supervisors;
f. On December 6, 1990 repeated a comment by the second shift supervisor about the way Plaintiff dressed, and when the plaintiff asked Defendant Lotto why he was attacking her verbally again, made a crude, humiliating, degrading and insulting remark about her dressing and personal bathing habits in front of all her co-workers.
g. Followed Plaintiff to the restroom, waited for her to come out, monitored the time she was in the restroom, and commented to Plaintiff about her restroom habits.
h. Made false, offensive, humiliating and degrading comments to Plaintiff within the hearing of other workers, about Plaintiff's attractiveness to, and relationships with male workers, insinuating that she had or desired improper sexual relations with them;
i. Made offensive and humiliating comments to Plaintiff about her sexual relationship with her husband, who is also a BIC employee; CT Page 3319
j. Refused to allow Plaintiff to use the Department telephone during her break to call home to check on her family, although he allowed male workers to do so;
k. Treated Plaintiff and other women workers under his supervision in the Department differently than the male workers, in that he did not treat male workers in a similar hostile, offensive and degrading manner, and that he made unreasonable work demands on female shipping department workers and not male workers.
(Plaintiffs' Complaint, Count One, para. 6).
The elements of a claim of assault and the defense of self defense involve purely factual questions pertaining to the conduct of the plaintiff employee and the defendant supervisor, and do not turn on the meaning of any provision of a collective bargaining agreement. See Briggs v. General Motors Corp.,754 F. Sup. 1111 (W.D. Mich. 1990) (employee's claim for assault, battery, and emotional distress are not preempted by 301 in that their resolution does not require contractual interpretation despite allegations of lost income); Zaks v. American Broadcasting Co., Inc., 626 F. Sup. 695, 698 (C.D. Cal. 1985) (employer's and co-employees' harrassment, vandalism, assault, stabbing, and stuffing of plaintiff into a closet unconscious not preempted by 301 in that national labor policy would not be preserved by preemption). Accordingly, the resolution of these issues does not turn on any provision of the collective bargaining agreement, and, therefore, count one is not preempted by 301.
B. Count Two — Defamation
In a defamation action, "[t]he standard of fault applicable to `private individuals,' . . . merely requires the plaintiff to prove a negligent misstatement of fact. Rosenblatt v. Baer,383 U.S. 75, 84, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966)." Miles v. Perry, 11 Conn. App. 584, 588, 529 A.2d 199 (1987). "[A] private individual . . . need only prove, by a preponderance of the evidence, negligence in the failure to investigate the facts properly prior to publication. (Citations omitted.) Id., 589. To defend a defamation claim a defendant must prove that the statements were privileged. Id., 594 n. 8.
In Nelson v. Lapeyrouse Grain Corp., 534 So.2d 1085 (Ala. CT Page 3320 1988), the court held that "the tort of defamation. . . . is not a derivative of the contract action; it is not rooted in the agreement. Id., 1091. The court further held:
 [D]etermining the existence of a privilege, a publication, or a defamatory statement — all essential questions implicated in defamation cases — does not inescapably lead to an absolute analysis of the provisions of the labor agreement. Determining whether the defendants were protected by a conditional or absolute privilege does not depend on their contractual right to fire for "just cause" but instead on the occasion at which the allegedly defamatory communications were made or on the existence of a mutuality of interests or duties. . . .
Id., 1090. See also Adams v. Shulton, Inc., U.S.A. Division,747 F. Sup. 1258, 1260 (W.D. Tenn. 1990), citing Kingle as dispositive the court held that alleged defamatory statements made during an investigation were not preempted by section 301. But see Barke v. Great Atlantic Pacific Tea Co. Inc.,722 F. Sup. 1257, 1261-62 (D. Md. 1989) (defamation claim based on letters of discipline sent by employer to union preempted in that it requires interpretation of collective bargaining agreement to see if employer privileged); Seid v. Pacific Bell, Inc.,635 F. Sup. 906, 910 (S.D. Cal. 1985) (defamation claim based on statements made in investigation of events leading to employee's discharge was preempted in that the charges and subsequent investigation are "intertwined with labor-management relations, and are subject to grievance arbitration under the collective bargaining agreement.")
In count two plaintiffs incorporate the allegations of count one and, further allege the following:
9. Throughout the year 1990, Defendant Michael Lotto, repeated and published the hostile, demeaning, insulting and defamatory statements concerning plaintiff's personal and professional life, physical habits and appearance, and personal characteristics as hereinabove alleged, many within the hearing of other employees, including inferences that Plaintiff had or had desired improper sexual relations with male employees other than her husband. CT Page 3321
10. Such statements were false and were made maliciously, with intent to harm Plaintiff, and were outside the scope of Defendant Lotto's duties and responsibilities as Plaintiff's supervisor and his duties as a supervisor for Defendant BIC Corporation.
(Plaintiffs' Complaint, Count Two, paras. 9-10).
In this case the allegations made by plaintiffs in claiming defamation are factual questions pertaining to the conduct and motivation of the defendant supervisor. Defendant does not point to any provision for an agreement which would make defendants' alleged statements privileged. Resolution of this issue does not turn on any provision of the collective bargaining agreement and, therefore, count two is not preempted by 301.b
C. Count Three — Invasion of Privacy
 The four categories of invasion of privacy are set forth in 3 Restatement (Second), Torts 652A as follows: (a) unreasonable intrusion upon the seclusion of another; (b) appropriation of the other's name or likeness; (c) unreasonable publicity given to the other's private life; or (d) publicity that unreasonably places the other in a false light before the public.
Goodrich v. Waterbury Republican-American, Inc., 188 Conn. 107,128, 448 A.2d 1317 (1982).
i. False Light
 [A] false light invasion of privacy occurs if "(a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in a reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." (Citations omitted.) This form of invasion of privacy protects one's interest in not being placed before the CT Page 3322 public in an objectionable false light or false position, "or in other words, otherwise than as he is." 3 Restatement (Second), Torts 652E, comment b. The essence of a false light privacy claim is that the matter published concerning the plaintiff (1) is not true; ibid; and (2) is such a "major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position." Id., Comment c.
Goodrich supra, 131.
ii. Publicity to Private Life
"[A] `private facts' claim is actionable only if the matter publicized is of a kind that `(a) would be highly offensive to a reasonable person, and (b) is not a legitimate concern to the public.' (Emphasis added.) 3 Restatement (Second), Torts 652D, p. 383." Goodrich, supra, 133.
In count three of their complaint plaintiffs incorporate the allegations of count two and further allege that defendant Lotto "gave unreasonable publicity to her private affairs in that they placed Plaintiff in a false light before her colleagues and fellow employees, staff and friends." (Plaintiffs' Complaint, Count Three, para. 16).
In the present case the elements of and defenses to an invasion of privacy claim raise factual questions going to the conduct of plaintiff and the conduct and motivation of defendant Lotto and does not go to the interpretation of the collective bargaining agreement. Defendant Lotto does not point to any portion of the agreement which may have governed the subject matter of the alleged statements, and therefore, this case is distinguishable from those cases in which the court found invasion of privacy claims preempted. See Jackson v. Liquid Carbonna Corp., 863 F.2d 111 (1st Cir. 1988) (employee's state law claim preempted in that drug testing was arguably regulated by the performances and safety clause in the arbitration agreement); Kirby v. Allegheny Beverage Corp., 811 F.2d 253 (4th Cir. 1987) (employer's search of employee's person may be governed by the provisions of collective bargaining agreement): CT Page 3323 Binkley v. Loughran, 714 F. Sup. 768 (M.D.N.C. 1988) (employer's publication of employee's psychiatric treatment arguably governed by collective bargaining agreement's benefit plan; employer's wiretapping or monitoring of employee's work phone may be permitted under the agreement; however, employer's wiretapping of employee's home phone was held not to be preempted). In the present case the alleged actions of defendant Lotto are more analogous to the actions of the employer in Binkley in wiretapping the the employee's home phone. Accordingly, this court finds that count three is not preempted by 301.
D. Count Four — Emotional Distress
In order to recover for intentional infliction of emotional distress, four elements must be established:
 (1) that the action intended to inflict emotional distress; or that he [the defendant] knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.
Petyan v. Ellis, 200 Conn. 243, 253, 510 A.2d 1338 (1986) (Citations omitted.) The defense to a claim for intentional infliction of emotional distress is that the conduct was privileged. Id., 254. In determining the preemption issue courts look to whether the employer was exercising "legal rights in a permissible way" so that the employer's conduct would fall short of the "extreme and outrageous" behavior required for emotional distress claims. See Douglas v. American Information Technologies Corp., 877 F.2d 565, 572-73 (7th Cir. 1989). A second test for preemption is whether the employer's conduct "crossed a line beyond which it would not be tolerated in civilized society," in which case preemption is not appropriate. Binkley, supra, 770.
The seminal preemption case in the area of emotional distress is Farmer v. United Brotherhood of Carpenters and Joiners of America, 430 U.S. 290, 97 S.Ct. 1056,51 L.Ed.2d 338 (1977). In Farmer the Court held that the employee's state-law claim for intentional infliction of emotional distress CT Page 3324 could be resolved without resolution of the merits of the underlying labor dispute. Id., 430 U.S. 304, 97 S.Ct. at 1065. The Court recognized the strong state interest in protecting its citizens from emotional distress caused by outrageous conduct. Id. Additionally, the Court reasoned that if the case were presented to the National Labor Relations Board, plaintiff would not be compensated for her emotional distress. Id. "[I]t is essential that the state tort be either unrelated to [the unfair labor practice] or a function of the particularly abusive manner in which the [unfair labor practice] is accomplished." Id.,430 U.S. at 305 97 S.Ct. at 1066.
The following cases have held that the employee's state law claims for emotional distress were not preempted: Keehs v. Consolidated Freightways of Delaware, Inc., 825 F.2d 133 (7th Cir. 1987) (no preemption found where plaintiff had a verbal and physical altercation with his supervisor during which the supervisor made sexually explicit remarks about plaintiff's wife). Clemence v. Meijer, Inc. 716 F. Sup. 298 (W.D. Mich. 1988) ("The factual questions of [emotional distress] which `pertain to the conduct and motivation of an employer' do not necessarily require court interpretation of the collective bargaining agreement"); Anderson v. United Auto Workers,738 F. Sup. 441, 442-44 (D. Kan. 1990) ("employer's disregarding employee's special medical restrictions not preempted in that resolution of the claim "does not interfere with the federal regulation of labor disputes and her claim furthers the state's overriding interest in protecton (sic) its citizens."); Coulter v. Construction and General Laborers Union Local 320, 812 P.2d 850,853 (Or.App. 1991) ("alleged discharge based on employee's refusal to engage in sexual relations not pre-empted in that determination of reasons for discharge and whether the reasons went beyond the bounds of tolerable conduct were not dependent on interpretation of the contract; "the parties could not have a contract to permit defendant to exercise its rights if plaintiff refused to engage in sexual relations").
The following cases hold that the employee's state-law emotional distress claims were preempted: Chimel v. Beverly Wilshire Hotel Co., 873 F.2d 1283, 1286 (9th Cir. 1989) (emotional distress claim arising out of discharge cannot be decided without interpreting or analyzing the agreement.); Miller v. ATT Network Systems, 850 F.2d 543, 551 (9th Cir. 1988) ("`farthest reaches of socially tolerable behavior'" is not an independent nonnegotiable barometer of conduct; hence CT Page 3325 preemption of intentional infliction of emotional distress claim was appropriate even where state anti-discriminatory law was violated); Knafel v. Pepsi Cola Bottlers of Akron, Inc.,850 F.2d 1155, 1163 (6th Cir. 1988) (claim that work assignment caused emotional distress preempted by collective bargaining agreement which prohibited discrimination for union activity, imposed restrictions on work conditions and transfer, and required arbitration of disputes under the agreement); Purvis v. Atkinson, 132 LRRM 2667 (E.D. Cal. 1988) (holding that the employer's conduct "arose either out of the grievance process or the discharge, and that none of [the] claims transcend the employment relationship.")
The State of Connecticut has a substantial interest in protecting its citizens from the intentional infliction of emotional distress. See Roston v. Circuit-Wise, Inc.,8 CSCR 1147 (September 9, 1992, O'Keefe, J.). The conduct alleged by the plaintiff is sufficiently extreme and outrageous to constitute infliction of emotional distress. Resolution of plaintiffs' claim may be made without reference to the collective bargaining agreement and therefore is not preempted by 301.
E. Count Seven — Loss of Consortium
Loss of consortium claims of an employee's spouse are derivative of the employee's claim and cannot stand alone; if the employee's claim is preempted by 301, so is the spouse's claim. Milne Employee's Ass'n v. Sun Carriers, Inc., 714 F. Sup. 1028,1035 (N.D. Cal. 1989).
The derivative loss of consortium claim is not preempted in that none of the primary claims are preempted.
2. The Workers' Compensation Act
Defendant Lotto asserts in his motion to dismiss that counts one, two, three four, and seven are barred by the exclusivity provision of the Workers' Compensation Act. Defendant argues that the plaintiff has failed to allege that Lotto's actions were "wilful or malicious" which would except the plaintiff's claim from the exclusivity of the Act.
In the case of Grant v. Bassman, 221 Conn. 465, 472,604 A.2d 814 (1992), the court held that "a claim that an injured plaintiff has made an exclusive election of workers' compensation CT Page 3326 is properly raised by a special defense." The court in Grant adopted the reasoning of the court in Fusaro v. Chase Brass 
Copper Co., 21 Conn. Sup. 240, 243, 154 A.2d 138 (1956), wherein the court held that General Statutes 31-284(a) "is not at all a denial of jurisdiction in the Superior Court, as such, but is basically a destruction of an otherwise existent common-law right of action."
The motion to dismiss is the improper vehicle to raise the exclusivity of the Workers' Compensation Act. Accordingly, the court denies the motion to dismiss as to this ground.
To the extent that the defendant raises the legal sufficiency of plaintiffs' allegations, this should be raised by filing a motion to strike. See Practice Book 152. Accordingly the court denies the motion on this ground as well.
3. CHRO Complaint/Release
In his motion, defendant Lotto asserts that count six should be dismissed in that defendant was not named in plaintiff Patricia A. Sedlak's complaint to the CHRO nor in the release of the CHRO authorizing suit against defendant BIC.
In opposition, plaintiffs argue that although defendant Lotto was not named as a respondent in the CHRO complaint, he did have full and substantial notice of the plaintiff's allegations as he was named in the complaint as the individual perpetrating the allegedly illegal acts. Plaintiffs further assert that defendant will suffer no prejudice because he did have notice.
General Statutes 46a-100 provides as follows:
 Any person who has timely filed a complaint with the commission on human rights and opportunities in accordance with section 46a-82, alleging a violation of section 46a-60 and who has obtained a release from the commission in accordance with section 46a-101, may also bring an action in the superior court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the respondent transacts business, except any action involving a state agency or official may be CT Page 3327 brought in the superior court for the judicial district of Hartford-New Britain.
General Statutes 46a-101 provides as follows:
 (a) No action may be brought in accordance with section 46a-100 unless the complainant has received a release from the commission in accordance with the provisions of this section.
 (b) The complainant, or his attorney, may request a release from the commission if his complaint with the commission is still pending after the expiration of two hundred ten days from the date of its filing.
 (c) The executive director of the commission shall grant a release, allowing the complainant to bring a civil action, within ten business days after receipt of the request for the release, except that if a case is scheduled for public hearing, the executive director may decline to issue a release. The commission may defer acting on a request for a release for thirty days if the executive director of the commission, or his designee, certifies that he has reason to believe that the complaint may be resolved within that period.
 (d) Upon granting a release, the commission shall dismiss or otherwise administratively dispose of the discriminatory practice complaint pending with the commission without cost or penalty assessed to any party.
 (e) Any action brought by the complainant in accordance with section 46a-100 shall be brought within ninety days of the receipt of the release from the commission.
General Statutes 46a-82(a) states the complaint procedure for discriminatory practices in pertinent part, as follows: CT Page 3328
 (a) Any person claiming to be aggrieved by an alleged discriminatory practice, except for an alleged violation of section 46a-68, may, by himself or his attorney, make, sign and file with the commission a complaint in writing under oath, which shall state the name and address of the person alleged to have committed the discriminatory practice, and which shall set forth the particulars thereof and contain such other information as may be required by the commission.
The only recorded case construing 46a-100 and 46a-101
formerly Conn. Public Act 91-331) is Blackwell v. Nast, Superior Court, Judicial District of Stamford/Norwalk at Stamford, Docket No. 920125014 (November 30, 1992, Nigro, J.). In the Blackwell case, plaintiff brought a sexual discrimination suit against the Board of Education and two school employees, Michael Nast, and John Kuczo. The court, Nigro, J., dismissed the count against Nast and Kuczo in that neither of the two were named as the Respondent in the plaintiffs' complaint to the CHRO. Id.
In the present case, defendant Lotto attached to his motion a copy of the plaintiff's complaint to the CHRO as Exhibit C. In the "complaint affidavit" plaintiff listed the Respondent as "BIC Corp. whose address is 500 Bic Drive, Milford, CT 06460". Although defendant Lotto is identified in the specific allegations of the complaint as the supervisor who harassed the plaintiff, plaintiff does not name Lotto as a Respondent.
This court follows the holding of the court in Blackwell, and therefore count six is dismissed on the ground that plaintiffs failed to exhaust administrative remedies by not naming Lotto as a respondent in the CHRO action and by not obtaining a release authorizing suit against Lotto.
4. EEOC Complaint/Right to Sue Letter
In his motion, defendant Lotto states that count six should be dismissed in that plaintiff did not name Lotto in her complaint to the EEOC nor was Lotto named in the EEOC's letter authorization suit against BIC.
Plaintiffs argue in opposition that defendant Lotto was named in the complaint to the EEOC as the perpetrator of the CT Page 3329 discriminatory acts. Plaintiffs further argue that defendant Lotto had notice of the EEOC action through investigations and therefore was not prejudiced by not being named as a Respondent.
Section 706(f)(1) of Title VII of the Federal Civil Rights Act, 42 U.S.C. § 2000e-5(f)(1) provides the procedure for instituting a civil action against the Respondent after filing a charge with the EEOC. The jurisdictional prerequisites that an individual must satisfy before he is entitled to institute a law suit under Title VII of the Civil Rights Act of 1964 are met where an individual (1) files a timely charge of employment discrimination with the EEOC, and (2) receives and acts upon the EEOC's statutory notice of right to sue. Alexander v. Garner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147
(1974). "Only parties previously identified as respondents in charges filed with the EEOC are subject to subsequent liability under Title VII." Terrell v. United Pipe Foundry Co., 644 F.2d 1112,1122 (5th Cir. 1981).
In the present case; defendant Lotto attached a copy of the plaintiff's EEOC charge to the motion to dismiss as Exhibit D. In the charge plaintiff names BIC Corp. as the entity that discriminated against plaintiff. Although plaintiff identifies defendant Lotto as a party who discriminated against plaintiff, she fails to name Lotto as a Respondent.
The plaintiffs have failed to exhaust administrative remedies prior to filing the action in count six by not naming Lotto as a respondent in the EEOC action and by not obtaining authorization from the EEOC to sue Lotto. Accordingly, count six of plaintiff's complaint is dismissed.
5. Demand For Relief
In his motion, defendant Lotto moves that the court dismiss the entire complaint in that plaintiffs violated Practice Book 131 and General Statutes 52-91 in not placing the demand for relief on a separate page of the complaint.
In opposition plaintiffs argue that a demand is included and that the failure to place it on a separate page is not a jurisdictional defect.
Practice Book 131 provides in pertinent part: CT Page 3330
 The first pleading on the part of the plaintiff shall be known as the complaint. It shall contain a concise statement of the facts constituting the cause of action and, on a separate page of the complaint, a demand for relief which shall be a statement of the remedy or remedies sought.
In Oakridge Builders, Inc. v. Mark E. Reynolds, 3 CSCR 924
(November 3, 1988, Pickett, J.), the plaintiffs moved to strike the prayer for relief in the defendant's counterclaim since it was not placed on a separate page in accordance with Practice Book 131. The court held that striking of the prayer for relief would amount to form over substance, since the repeal of Practice Book 310, which provided that pleadings be submitted to the jury. The court therefore, denied defendants' motion to strike the prayer for relief. Id., 925.
The motion to dismiss for the same reasons set forth by Judge Pickett in the Oakridge case is denied.
Howard F. Zoarski, Judge.